C. R. JOHNS ET AL. v. JESSE J. NORTHCUTT ET AL.

1. AMENDMENT—SURPRISE.—An original petition was in the usual form of trespass to try title. After several terms, plaintiffs, by amendment, made additional parties plaintiffs, and claimed to be tenants in common with defendants, and asked partition. The plaintiffs were numerous, and claimed as heirs, the defendants having bought of parties recognized as co-heirs. The amendment being filed when the case was called for trial: *Held*, A sufficient ground for contin-

nance as surprise; but no error was committed by the court in refusing to postpone the case to a future day of the term, it not appearing that defendants would have been better prepared than when the case was called.

2. EVIDENCE—HEARSAY—HEIRSHIP.—A witness testified, that by correspondence with parties named by him, and who were members of the family, he had heard, and that he believed, that certain parties (named by witness) were heirs, &c.; to which it was objected that "it was hearsay, and incompetent to prove heirship": *Held*, That the objection should have been sustained, and the testimony excluded.

3. PRACTICE — HEARSAY.—Where testimony is offered, in proof of heirship, which does not come within the exceptions admitting hearsay in evidence, it is sufficient to make such objection as will clearly point out a *prima-facie* valid ground for its exclusion; and the objection that it is hearsay is sufficient to invoke the action of the court.

4. EVIDENCE MATERIAL.—That plaintiffs were claiming partition renders it material that all the parties interested be before the court; and hence, proof of heirship of all parties taking by descent from heirs of the party from whom the estate descended became material, although in no way affecting the extent of the interest held by the defendants as co-tenants.

5. DECREE IN PROBATE COURT WITHOUT NOTICE NOT CONCLUSIVE.—Under the Probate law of 1870, (Paschal's Dig., 5744–5746,) a decree of the District Court "adjudging and decreeing L. J. and J. C. Robinson to be the heirs and only heirs of Jesse J. Robinson, deceased, and ordering and adjudging the entire estate of said decedent to be delivered to them," made on the application of said parties, and without notice to any others, is but an *ex-parte* proceeding, and does not conclude others in fact heirs of said Jesse J. Robinson.

6. BONA-FIDE PURCHASER.—Such decree not acting upon the interest of heirs not having notice, those taking under it had no legal or equitable title to the interest of those not having notice of such proceedings; and as to them and their interest, purchasers from those taking under such judgment could not be *bona-fide* purchasers.

7. COSTS.—In an action for partition, the defendants are liable for all costs incurred in contesting the rights of the successful plaintiffs in such suit. Subsequent to the decree ascertaining the rights of the parties, the costs should be apportioned according to their respective interests.

APPEAL from Travis. Tried below before the Hon. E. B. Turner.

April 20, 1875, Jesse J. Northcutt and about sixty others brought trespass to try title, in the District Court, against C. R. Johns, F. Everett, Wm. Von Rosenberg, and S. J. Swenson, for about 3,000 acres of land patented to Henry Martin.

June 10, 1875, defendants pleaded not guilty and general denial.

November 1, 1876, defendants specially answered that the land in controversy belonged to one Jesse J. Robinson at his death, in 1862; that by a judgment and decree of the District Court of Sabine county, Texas, rendered April 9, 1873, L. J. and J. C. Robinson were adjudged to be the heirs and only heirs of said Jesse J. Robinson, and as such entitled to receive his estate, embracing the land in controversy, which judgment has never been vacated, annulled, or reversed, but is still a valid and subsisting judgment.

That on May 5, 1874, said L. J. and J. C. Robinson, being seized and in possession of said land, had in their custody all the original title papers, showing complete chain of title from the State to the said Jesse J. Robinson, and a certified copy of said judgment and decree adjudging them to be the only heirs of the said Jesse J. Robinson, deceased, all of which were exhibited to defendants; that said L. J. and J. C. Robinson sold said land to defendant S. J. Swenson for $4,605, Swenson believing the title to be perfect, as it appeared to be be and was on its face; and that Swenson paid the purchase-money in good faith, and received deed from said vendors with general warranty, and entered into possession under said deed; that thereafter Swenson conveyed one-half of said land to Johns, Everett, and Rosenberg. The defendants alleged the payment of the purchase-money, and innocence on the part of the purchasers of any defect in the title.

Defendants further insisted, that on account of the laches of the plaintiffs in asserting their rights, if any, and permitting defendants to expend money in purchasing the legal title to said land, in event of recovery by plaintiffs they

should be required to refund the purchase-money to defendants.

In replication filed May 3, 1877, plaintiffs denied all the allegations in defendants' amended answer, and alleged that if there was any such judgment or decree of the District Court of Sabine county, Texas, as alleged by defendants in their amended answer, the same was rendered without jurisdiction of the proceeding wherein the same was attempted to be acted on by said court, and that plaintiffs were in no way made parties to said proceedings, and that they had no notice of the same, and said pretended decree is null and void; of all which defendants had knowledge, or could, with proper diligence, have had knowledge.

On same day, May 3, plaintiffs filed an amended petition, correcting the names of many of the plaintiffs and adding other new plaintiffs, and asked for a decree of partition acknowledging that defendants were entitled to the share of their vendors in the land, being two-sixtieths.

May 4, 1877, defendants replied, denying the allegation in plaintiffs' amended petition.

Defendants claimed surprise at the amended petition, and asked that the case be postponed to a later day in the term. The court refused to delay the case. Trial was had May 4, 1877, and the court rendered judgment for the plaintiffs for fifty-eight-sixtieths of the land, and for defendants two-sixtieths, and against defendants for all costs up to the rendition of the judgment, and awarding partition.

Motion for new trial was overruled, and defendants appealed.

The facts as agreed upon by the parties are—

1. That Jesse J. Robinson died in the county of Sabine, State of Texas, in the year 1862, being seized in fee of the premises in controversy.

2. That letters of administration were granted on the estate of said Jesse J. Robinson, in said county and State, in the same year, (1862,) shortly after his death.

3. That the said Jesse J. Robinson at the time of his death left no wife, child, descendants, parents, nor brothers or sisters surviving him; that at the date of his death he left surviving him sixty nephews and nieces, who were either living or had left descendants; that all of the plaintiffs named in the plaintiffs' original and amended petitions were either nephews and nieces of Jesse J. Robinson or descendants of nephews and nieces, except as to certain persons named in plaintiffs' petition, to wit: L. M. New, Joshua Marbut, Nancy Wiggins, Luke Woods, Angelina Knight, Wyatt Snow, Catherine Duncan, Sarah Singleton, and Elizabeth Phillipse. And as to the heirship of the above-named parties, A. J. Harris, a witness for the plaintiffs, and one of the plaintiffs, testified as follows: "I have learned, by correspondence with William New (the husband of Lydia New) and L. M. New, of Corinth, Mississippi, that said L. M. New is a child and sole heir of said Lydia New, said Lydia New being a daughter of Luke Robinson and niece of Jesse J. Robinson, deceased. From Sarah Miner, (wife of M. S. Miner,) I learn that the descendants of Mary Marbut are Joshua Marbut and Nancy Wiggins, and that Luke Woods is the sole descendant of Charlotte Woods; the said Mary Marbut and Charlotte Woods being also daughters of Luke Robinson and nieces of Jesse J. Robinson, deceased. By letters received by me from Wyatt Snow, Sarah Singleton, and Catherine Duncan, (whom I learned to be heirs and children of Narcissa Snow from Jesse J. Northcutt and Toliver Webb,) I have ascertained that the following persons are the children and only heirs of Narcissa Snow, to wit: Angelina Knight, Wyatt M. Snow, Benjamin Snow, Catherine Duncan, Sarah Singleton, and Elizabeth Phillipse; the said Narcissa Snow being a daughter of Christian Webb and niece of Jesse J. Robinson, deceased. And I am satisfied that the information so obtained is correct, and that the persons named above, and other plaintiffs mentioned in the original and amended petitions, are the only heirs at law of the said Jesse J. Robin-

son, except L. J. and J. C. Robinson, under whom defend-
ants claim title; the said L. J. and J. C. Robinson being
both nephews of said Jesse J. Robinson, deceased."

The above testimony of said A. J. Harris was taken in
connection with the proof on file, that said Lydia New, Mary
Marbut, Charlotte Woods, and Narcissa Snow were nieces
of said Jesse J. Robinson, deceased, and that they were
dead; and that Sarah Miner, Jesse J. Northcutt, Toliver
Webb, mentioned in said testimony, were proven to be heirs
of said Jesse J. Robinson, deceased; and that it had been
proven that said A. J. Harris was an heir of said Jesse J.
Robinson.

The testimony of said A. J. Harris, as stated above, was
objected to by counsel for defendants, on the ground that it
was hearsay, and not competent to prove the heirship of the
children of the said parties; which objection being over-
ruled, they excepted and took their bill of exceptions.

4. That defendants had in their possession, and read in
evidence, the original patent for the land in controversy, and
the original title papers thereto to Jesse J. Robinson.

5. That the following application was made to and decree
in probate was rendered by the District Court of Sabine
county, and were read in evidence by defendant:

"In the estate of Jesse J. Robinson, deceased. Applica-
tion of L. J. and J. C. Robinson for estate to be delivered to
them.

"Filed April 9, 1873.

"JOHN J. GOODRICH, C. D. C.,
"*Sabine County, Texas.*

"In the estate of Jesse J. Robinson, deceased:

"STATE OF TEXAS, }
  *County of Sabine.* } District Court, April Term, A. D. 1878:

"To the honorable District Court of said county: Your
petitioner, L. J. Robinson, a resident citizen of Cherokee
county, in said State, and J. C. Robinson, who resides in Jas-
per county, in the State of Georgia, with respect, allege and

show unto your honor, that they are the nephews and only heirs of Jesse J. Robinson, deceased, and as such are entitled to receive the property and effects of said estate; that letters testamentary upon said estate were originally granted by the County Court of said Sabine county on, to wit, the —— day of —, A. D. 1862, and that all the claims established and exhibited against said estate have been paid, and that no claims or debts against the same are known to exist. Petitioners therefore pray that the said estate may be delivered to them, and for such orders and decrees in and about the premises as may be necessary and proper, and as to your honor may seem meet; and as in duty bound, etc.

"W. W. WEATHEROUD,

"L. HOWELL,

"*For Petitioners.*

"District Court, April Term, A. D. 1873. Sabine county, April 9, 1873.

"Estate of Jesse J. Robinson, deceased. The application of L. J. Robinson and J. C. Robinson, praying said estate to be delivered to them, coming on to be heard, and it appearing to the court that the said applicants are heirs and only heirs of said deceased, and the said applicants are entitled to receive said estate, it is therefore ordered by the court that the real property of said estate be, and is hereby, delivered to the said applicants, and that the said administrator of said estate deliver to said applicants all the personal property and. effects of said estate, upon their proper receipts or vouchers; therefore it is further ordered that the administrator retain in his hands sufficient amount of the money on hand to pay court fees and all expenses of administration which remain unpaid."

6. That above decree had been recorded in Travis county, Texas, before the purchase of the land in controversy by defendants.

7. That L. J. and J. C. Robinson conveyed the land in controversy, by warranty deed executed May 5, 1874, to S. J.

Swenson, and that S. J. Swenson conveyed shortly thereafter one-half the land to his co-defendants, Johns, Everett, and Von Rosenberg, and these conveyances were read in evidence by defendants.

8. That said Swenson paid said L. J. and J. C. Robinson $5,605 cash for the land, and that said Johns, Everett, and Von Rosenberg paid half above amount to said Swenson for half the land at the time the conveyances above mentioned were executed.

9. That before the sale by L. J. and J. C. Robinson, Senator Douglass, of Tyler, Texas, who had a mortgage upon the land in controversy, as did some other person in Eastern Texas, presented to defendant Von Rosenberg the chain of title to said land, desiring to sell it. Douglass assured Von Rosenberg that the title was all right, and presented the original title papers to the land, and a certified copy of the decree of the District Court of Sabine county, which was recorded in Travis county. Von Rosenberg made some efforts to sell it, and finally called the attention of Swenson to it. Von Rosenberg thought the title perfect. Was then engaged handling lands and examining land titles. Swenson bought thinking he had a perfect title; paid cash the sum named in the deed. Part of it was paid at Raymond & Whitis', to take up a mortgage in their hands belonging to some one in Eastern Texas. Douglass told Von Rosenberg he knew all about the matter, and that the title was good, and so assured Swenson, who bought in good faith, thinking he had a perfect title, and paid the purchase-money under that impression. The land now (at the trial) would hardly sell for so much. Swenson received possession of the land, and held possession. He sold half to Johns, Everett, and Von Rosenberg, they still thinking the title good. That Swenson and Johns & Co. bought the land for speculation; thought the land was cheap at the price, but the land would now hardly bring as much as Swenson paid. Defendants never examined the record of the District Court of Sabine county, except the decree of court.

Took Douglass' word that the title was all right, together with the decree.

*Terrell & Walker* and *A. J. Peeler*, for appellants.

I. The court erred in forcing appellants to trial in the court below. The amendment filed on the eve of trial, making new parties, was ground for surprise. (Paschal's Dig., 54; Turner v. Lambeth, 2 Tex., 365.)

II. The court erred in admitting Harris' testimony, from correspondence with persons still living, as to the heirship of Joshua Marbut and others, it being hearsay. (Stein v. Bowman *et al.*, 13 Pet., 220; 1 Greenl. Ev., sec. 103; Greenwood v. Spiller, 2 Scam., (Ill.,) 502; Mooers v. Bunker, 9 Fost., (N. H.,) 420; White v. Strother, 11 Ala., 720; Covert v. Hertzog, 4 Barr., (Penn.,) 145.)

III. Under the facts developed, and in view of the amendment by appellees making their case an equitable one, on a recovery they should have been required to refund to appellants their *pro rata* of purchase-money. (Brook v. Moreland, 32 Tex., 380; McMasters v. Mills, 30 Tex., 594; Jones v. Bowles, 3 Myl. & K., 581; Cottrell v. Hughes, 15 C. B., 532–554.)

IV. The decree of the District Court was not a nullity, and its attack allowed below in a collateral proceeding was error. (Const. of 1870, art. 5, sec. 7; Paschal's Dig., 5743, 5745, 5753, 5791, 5792; Withers v. Patterson, 27 Tex., 491; Taylor v. Snow, 47 Tex., 462; Grignon v. Astor, 2 How., 319; Caujolle v. Ferrie, 13 Wall., 465; Freeman on Judg., sec. 319; Thornton v. Glover, 25 Miss., 134.)

V. The costs were improperly taxed against the appellees in a partition suit. (Agar v. Fairfax, 2 Lead. Cases in Eq., (3d Am. ed., from 2d Lond. ed.,) 638; Fairchild v. Hunt, 14 N. J. L., (1 McCart.,) 367.)

*A. J. Harris* and *Smith & Blackburn*, for appellees.

I. There was no error in forcing defendants into trial under

the circumstances. (Williams v. Huling, 43 Tex., 120; Mc-Ilhenny v. Lee, 43 Tex., 205; Cummings v. Rice, 9 Tex., 527; Watson v. Hewitt, 45 Tex., 472.)

II. The objection to the testimony of Harris, that "it was hearsay, and therefore inadmissible," was properly over-ruled. (1 Phil. on Ev., pp. 217, 224, 227, 228, 229, 231; 3 Phil. on Ev., 229.)

III. Appellants were not bona-fide purchasers, as against the interests of plaintiffs. (Weathered v. Boone, 17 Tex., 150; Peters v. Clements, 46 Tex., 123; Cryer v. Andrews, 11 Tex., 170; Story's Eq. Jur., sec. 1502.)

IV. Appellants, taking under a title void as to appellees, could not insist upon being reimbursed in the purchase-money paid out. (Berry v. Donley, 26 Tex., 747; Cryer v. Andrews, 11 Tex., 170.)

V. Did the court err in holding that plaintiffs could collat-erally in this action attack, disregard, and treat as of no bind-ing force the judgment and decree of the District Court of Sabine county adjudging and decreeing L. J. and J. C. Rob-inson to be the heirs, and only heirs, of Jesse J. Robinson, deceased, and adjudging and ordering the estate, real and personal, of the said Jesse J. Robinson, deceased, to be deliv-ered to them?

Appellees deny that this was error; they were not made parties to said proceedings; and refer to Probate Laws of 1870, secs. 6, 8, 12, 13, 14, 16, 17, 137, 141, 278, 281; New-land v. Holland, 45 Tex., 592; Cryer v. Andrews, 11 Tex., 170; Morrison v. Loftin, 44 Tex., 16; Horan v. Wahrenber-ger, 9 Tex., 313; Benoit v. Benoit's Heirs, 8 La., (O. S.,) 228; Guidry v. Guidry, 16 La., (O. S.,) 157.

VI. Did the court err in adjudging against appellants the entire costs up to the rendition of the judgment? (Paschal's Dig., art. 1483; Yeary v. Cummings, 28 Tex., 97; Watson v. Hewitt, 45 Tex., 472; Anderson v. McKinney, 22 Tex., 654; Baker v. Tom, 4 Tex., 6.)

MOORE, ASSOCIATE JUSTICE.—This case has been submitted to the court upon points of law and fact, upon which it is agreed by the parties it should be decided, with a statement of the matters presented by the record connected therewith deemed essential to their proper understanding and determination. While it is, therefore, incumbent upon us to consider and determine all the points agreed upon and presented for our consideration, we must do so upon the facts and matters exhibited in the statement agreed upon and submitted to us by the parties for their proper elucidation and decision.

1. From the difference in the apparent nature and object of the suit as presented in the original and amended petitions, we may reasonably infer that appellants would have been entitled to a continuance, on the ground of surprise, by the filing of the amended petition by appellees. But it is quite evident that we are not warranted in saying, from the matters and things presented in the agreement, that the court erred in declining to postpone the case to a future day in the term, on appellants' simple application that this should be done merely because of the filing of the amended petition. It is not shown that appellants were in fact surprised by the amendment, or were not as fully prepared for a trial of the case when called, as they could hope to be at a subsequent day of the term or by another term of the court. (Cummings *v.* Rice, 9 Tex., 527.)

2. The objection to the evidence of the witness Harris was well taken, and should have been sustained. Counsel for appellees do not, we believe, claim that the testimony was in all respects strictly admissible, but he insisted that the objection made to it by appellants did not present a sufficient ground for its exclusion, and therefore they have no cause to complain of the ruling of the court. Undeniably, the court was only required to consider such objections to testimony as were taken to it when offered by the party denying its admissibility. Objections not taken when the testimony is offered are waived, and cannot be considered or urged in this

court as grounds for the reversal of the judgment, especially if they are such as might, if taken in the court below, have been obviated by additional evidence. But if an objection is made which is *prima facie* valid, and in general applicable to the evidence as offered, it is sufficient, and should be sustained, although there are special and particular phases of such testimony where, or exceptionable cases in which, it may be admissible. In such cases, it is incumbent upon the party offering it to meet such general objections, by showing that in the case on trial, or by reason of the special and particular phase of the testimony as presented, it should be admitted. The testimony here in question is undeniably merely hearsay. Such evidence is, of course, in general inadmissible. Appellees insist, however, that hearsay is admissible to prove pedigree; but still it must be admitted this character of testimony is not generally admissible, even for this purpose. But still its admissibility for the proof of pedigree is restricted and limited to the hearsay or declarations of a particular character of persons, or such as are made and testified to under special and particular circumstances. The testimony objected to, plainly, upon its face, does not come within the exceptions to the general rule, that hearsay evidence is not admissible; and this being the case, it was only incumbent upon appellant to make such objection as clearly points out a *prima facie* valid ground for its exclusion. (Stein *v.* Bowman, 13 Pet., 220; White *v.* Strother, 11 Ala., 720; Mooers *v.* Bunker, 9 Fost., (N. H.,) 420; Covert *v.* Hertzog, 4 Barr, 145; Greenwood *v.* Spiller, 2 Scam., 502.)

It is insisted, by appellees, that although the objection to this evidence may have been improperly overruled, yet as it could not possibly, as they claim, have worked any injury to appellants, it is not an error for which the judgment should be reversed. But evidently the predicate of this proposition is without foundation. The deduction from it is, therefore, fallacious and untenable. Defendants, who are sued for partition of land, are unquestionably entitled to know that

the parties by whom they are brought into court are in fact their co-tenants. As has been said by this court, it should be made to appear in suits of this character that the parties before the court own the entire land sought to be divided. (Buffalo Bayou Ship Channel Co. *v.* Bruly, 45 Tex., 6.) A valid and binding partition can only be effected by a suit in the District Court to which all the co-tenants are parties. And hence the defendant is entitled to hold the plaintiffs to strict proof of their right to such shares as they ask shall be allotted to them, although their own share may not be thereby increased or diminished.

3. The court did not err in holding that the judgment and decree of the District Court of Sabine county, "adjudging and decreeing L. J. and J. C. Robinson to be the heirs, and only heirs, of Jesse J. Robinson, deceased, and ordering and adjudging the entire estate of said decedent to be delivered to them," to be of no binding force and effect against appellees.

The record in this case, which was introduced in evidence by appellants, shows beyond all question that appellees were not before the court when this decree was made, and had no opportunity to assert their claim to an interest in the property of said estate. The decree was altogether an *ex-parte* proceeding. There was no case before the court to be adjudicated and determined. There is nothing in the statute under which this proceeding was had which gives the least color for its support. The statute regulating the partition of the property of estates among heirs and distributees evidently contemplates citation to the parties interested in the distribution who are not parties to the application for partition, and that the court, when all the parties are before it, shall inquire into and settle their respective shares or interest in the property to be distributed. (Paschal's Dig., arts. 5744–5746.) The estate may be delivered, it is true, to those who are entitled to receive it, if they desire it, "provided all be represented." (Id., 5745.) Certainly no other inference can

be drawn from the plain language of this section of the statute, which is evidently the one under which the court acted in making this decree, than that the delivery or distribution of the property of the estate to the parties applying for or brought before the court is not binding on those not represented. (Id., arts. 5467, 5469, 5475, 5477, 5478, 5605, 5609; see, also, Cryer *v.* Andrews, 11 Tex., 170; 8 La., (O. S.,) 228; Id., 157.)

4. Appellants not being parties to the proceedings in the District Court of Sabine county, the title cast upon them by the death of the decedent was not divested out of them, or in any way affected by the decree. The parties in whose favor said decree was made, acquired thereby neither a legal nor equitable right to their shares or portions of this land; and as appellants are chargeable with knowledge of the legal effect of the judgment or decree by and under which they claim to have acquired their title, whatever may have been their confidence in the validity and sufficiency of the title which they supposed they were acquiring, they certainly cannot invoke for their protection against appellees the doctrine applicable to innocent purchasers, unless they are able to show that appellees had in some way contributed to the fraud and deception practiced upon them by their vendors.

5. The facts exhibited in the agreed statement upon which the case has been submitted, are not sufficiently full to enable us to say whether the judgment in regard to the costs is strictly correct or not. It may not be amiss, however, to remark that appellants are properly chargeable with all the costs incurred in contesting appellees' title to that part of the land adjudged them, but that so much of it as has or may be incurred in making partition should be divided and apportioned between the parties according to their respective interest in the land.

The judgment is reversed and the cause remanded.

                 REVERSED AND REMANDED.