RUSSELL v. LIGGETT DRUG CO., Inc., et al.

No. 13031.

Court of Civil Appeals of Texas. Dallas.

June 13, 1941.

Rehearing Denied July 4, 1941.

White & Yarborough, of Dallas, for appellant.

W. B. Handley, of Dallas, for appellees.

YOUNG, Justice.

Suit for damages was prosecuted by Mrs. Genevieve Russell, administratrix of the estate of Mrs. Mary R. Moore, deceased, for the latter's death, following injuries allegedly sustained by falling on the slippery floor of a beauty shop under lease from appellees to a third party. At the conclusion of plaintiff's case, defendants, before offering testimony, moved for instructed verdict, which was sustained. A judgment against plaintiff, rendered upon peremptory instruction to the jury, is the basis of this appeal.

The accident occurred on September 8, 1937; the rented space, known as 401–402 Liggett Building, having been engaged from month to month as a beauty parlor by Mrs. E. L. Moore, a daughter-in-law of deceased. The premises were first occupied on September 5, 1937, but before that, Mrs. Moore, the lessee, had required defendant, Liggett Drug Company, Inc., through its building manager, to clean, polish and wax the floors of both rooms. The janitor service provided by the Drug Company was a daily clean-up of its floors after office hours. The shop equipment was distributed through the entire quarters, entrance thereto being by room 402 only. The elder Mrs. Moore (deceased) had been to the shop the preceding day for a "shampoo and set," remaining an hour or two; at the same time, looking over some materials and a chair she planned to reupholster. On this trip, she necessarily walked across the floors of both rooms; which floors were of wood, and apparently in the same condition as to polish and smoothness. On the occasion of her fall, Mrs. Moore had come in by the usual entrance, going into room 401 where she was occupied until possibly two o'clock with her repair work. There was testimony that about such time, she had an arrangement to meet her son (E. L. Moore) down on the street in an automobile, and be driven home. The deceased then left the shop by the aforesaid exit and went to the elevator, where, having forgotten something, she returned to a supply cabinet in room 402,

and turning again to go out, she fell. Certain injuries resulted, from the effects of which Mrs. Moore continued to suffer until her death in November, 1938.

Appellant's main complaint was in the alleged failure of defendant to have the floor of the leased premises in reasonably safe condition for use by customers and invitees such as deceased; in that, grease, wax and oil had been placed thereon, rendering it slick, slippery, and dangerous to walk upon; which condition was well known to defendant, but not to the injured party; of failure to inspect the floor, or to warn deceased of aforesaid defects and dangers.

It was further contended that appellant's prima facie case raised issues of fact concerning the slippery condition of said floor, which had been mopped and oiled the night before by defendant's employes; that, as a matter of law, deceased was in the exercise of ordinary care when she fell, but, nevertheless, her fatal injuries proximately followed; and the court erred in taking such issues from the jury in the peremptory instructions given.

Turning again to the evidence, and viewing same most favorably toward the party adversely affected by the court's ruling, we find from testimony of the younger Mrs. Moore (lessee and shop owner) that she had requested the floors of said suite to be cleaned, varnished and waxed prior to her moving in; that the consequent work thereon by defendant's manager was satisfactory to her, all floors being put in the same condition and so maintained, except for regular janitor service. On this point she testified:

"Q. The condition of these floors at the time you moved in there, whatever it may have been, did it remain the same during the time you continued to occupy the premises? A. All the floors were the same except in the front room and I now have a rug on it.

"Q. Well, you said they were polished and cleaned up and taken care of. Did the floors remain the same from the time you moved into the premises until after Mrs. Moore fell, that is, your mother-in-law? A. Yes.

"Q. There had not been any change in the condition of the floors? A. No.

"Q. There had been nothing done to them, then, to change their condition, that is, the surface of them? A. Not that I

know of, unless at night they would wipe them up. I am not sure when they cleaned them up in the evening, but otherwise they were the same. * * *

"Q. Now, state what are the facts in reference to whether or not that floor was slick on September 8, 1937? A. It was a waxed floor; yes, polished and waxed.

"Q. But was it slick? A. Well, I guess it was just like a regular waxed floor; sure it was slick; you could slide on it and fall down."

Miss Betty Ford, operator in the shop, testified that the floors appeared to have the same finish; no spots, but that the wax covering was "awfully slick"; she had slipped on the floor herself and had to be careful how she stepped; stating further, that she had witnessed the janitor cleaning up on the previous evening. An oil mop was used; that she saw oil on the mop, but noticed none on the floor; it had a glossy appearance after it was cleaned. In this connection, plaintiff's counsel elicited the following testimony: "Q. * * * State what are the facts in reference to whether or not it was slicker after they put that oil mop on it than it was before. A. It was about the same. It was slick all the time anyway. There was not much difference. An oil mop is to clean up the dirt."

█ It is not here contended, nor is there any evidence that the clothing worn by the elder Mrs. Moore became soiled by coming in contact with the floor; that the surface thereof was uneven, or that there was any absence of proper lights. On the contrary, we have present merely a freshly waxed and polished floor, such as was required by the new lessee. From the evidence, the surface condition, after being renovated, was "just like a regular waxed floor"; likewise, after the use of the mop, the appearance was "about the same." It is uniformly held that the waxing or oiling of floors by storekeepers or building owners is a customary and necessary practice, and is not negligence per se. The duty to customers or invitees is the exercise of ordinary care in the particular treatment of the floor and in its maintenance thereafter. See Anno. to J. C. Penny Co. v. Robison (Ohio), 100 A.L.R. 744; also previous notes in 58 A.L.R. p. 142, and 33 A.L.R. p. 221. Proof on behalf of an injured party in such cases must go further and comprehend some specific act of negligence, either in the initial oiling or

waxing, or the later method of servicing by way of cleansing appliances; as illustrated in S. H. Kress & Co. v. Dyer, Tex. Civ.App., 49 S.W.2d 986, where facts tended to establish defective maintenance by irregular applications of oil. Also to the same effect are Hohlt v. Routt, Tex.Civ. App., 48 S.W.2d 386 (grease spots and sweeping compound causing damp spots); The Fair, Inc., v. Preisach, Tex.Civ.App., 77 S.W.2d 725 (oil spots); Kress & Co. v. Jennings, Tex.Civ.App., 64 S.W.2d 1074 (oil and water mixture); also Alamo National Bank of San Antonio v. Hazlitt, Tex.Civ.App., 92 S.W.2d 315 (unsafe maintenance of stairway; use of soap in cleaning; and failure to provide rubber step or handrail).

█ The facts of this record, under the most favorable construction, do not substantiate plaintiff's averments of specific acts and omissions on part of the defendant, raising issues of negligence. A basic case on the subject is Spickernagle v. C. S. Woolworth & Co., 236 Pa. 496, 84 A. 909, Ann.Cas.1914A, 132. We conclude the principle there announced is decisively adverse to appellant's contention here. In Wilson v. Werry, Tex.Civ.App., 137 S.W. 390, writ refused, this court has applied the general rule to a like situation. Quoting from the syllabus for brevity, it was held: "The construction of the floors of the corridors of an office building with unpolished marble slabs customarily used for such purposes in like buildings does not of itself show a failure of the owner to exercise due care to render the corridors safe for those who may lawfully use them, and one lawfully in the building may not recover for injuries caused by slipping on the floor of a corridor on mere proof of the character of the floor."

█ Furthermore, the testimony shows that the injured party was in the beauty shop for an hour or two the day before, and that on the occasion in question, she entered the shop in the morning, remaining there until early afternoon; and that, to engage in her work, she was compelled to walk through the room where she later fell. Whatever may have been the condition of the floor, it was not concealed, but obvious and plainly to be observed by the injured lady through walking thereon. From this perspective, it is difficult to escape the conclusion of nonliability for injuries from dangers which are manifest, or as well known to the in-

jured party as to the defendant. 20 R.C.L., Negligence, pp. 56, 57. A well-stated pronouncement of the law controlling the instant facts is found in Fort Worth & D. C. R. Co. v. Hambright, Tex.Civ.App., 130 S. W.2d 436, 439, where Judge Stokes, for the court, said: "The only condition under which such an owner is liable to those whom he invites upon his premises are when dangerous and unsafe instrumentalities or conditions exist and are known to him and not known to such invited persons and they are injured by such instrumentalities or conditions. It follows that if a person is injured under such circumstances and the instrumentality or condition by which he was injured is as obvious or well known to him as it is to the owner of the premises, no liability exists for such injury and the law will allow him no recovery therefor."

We are of opinion that the trial court correctly directed a verdict herein, and its judgment in so ruling must be in all respects affirmed.

Affirmed.