### ROGERS v. COLLIER et al.
#### No. 11983.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 21, 1949.

Rehearing Denied Oct. 19, 1949.

Carl Wright Johnson, San Antonio, Nat L. Hardy, San Antonio, Edgar Pfeil, San Antonio, for appellant.

Morriss, Morriss & Boatwright, San Antonio, Teairl W. Lewis, San Antonio, for appellees.

W. O. MURRAY, Justice.

This suit was instituted by Bessie B. Collier and husband, T. W. Collier, against N. Jay Rogers, individually and doing business as Texas State Optical Company, seeking to recover damages for personal injuries sustained by Bessie B. Collier when she slipped and fell on the floor of the office of the Texas State Optical Company.

The trial was to a jury and, in answering the questions propounded, the jury found as follows:

(1) That there was a slippery substance on defendant's floor at the time and place where Bessie B. Collier fell.

(2) That the defendant, or his agent, R. L. Schumacher, knew of the existence of such slippery substance on the floor of his place of business.

(3) That it was negligence on the part of defendant, or his agent, R. L. Schumacher, to permit such slippery substance to remain on the floor.

(4) That such negligence was a proximate cause of the injuries sustained by Bessie B. Collier.

(5) That Bessie B. Collier prior to her fall could not have discovered the presence of such slippery substance by the use of ordinary care.

(6) That the fall was not the result of an unavoidable accident.

(7) The amount of damages sustained was the sum of $5,000.

Judgment was entered in keeping with the findings of the jury and N. Jay Rogers, d/b/a Texas State Optical Company, has prosecuted this appeal.

Appellant's first three points present the contention that there is no evidence to support a finding that appellant, his agent or employees were negligent in any particular which caused the fall of Bessie B. Collier, and that there was no evidence that appellant or any of his agents or employees knew, or should have known, by the exercise of ordinary prudence, that the floor of appellant's place of business, where

Bessie B. Collier fell was slippery or dangerous in any manner, and, further, that the condition of the floor in appellant's premises, including the place where Bessie B. Collier fell, was open and obvious to Mrs. Collier and to all other persons entering therein, and that Mrs. Collier knew, or could have known, by the exercise of ordinary prudence, the condition of said floor as well as appellant or any of his agents or employees.

The evidence shows that on Saturday, January 12, 1946, Mrs. Bessie B. Collier went to the office of the Texas State Optical Company at 503 East Houston Street in the City of San Antonio, for the purpose of having her eyes examined and to have the lenses of her spectacles changed, if necessary. She arrived at the office about 10 o'clock in the morning and was there for some two and a half or three hours. The company has a small reception room on the ground floor and the work of examining eyes and fitting glasses is done upstairs. The floor of the reception room was covered with linoleum, which was washed and waxed once a week. The company kept a maid on duty, whose duty it was to sweep the floor four times a day. A porter was employed who washed and waxed the floor of the upstairs office on Wednesday nights and the floor of the downstairs reception room on Thursday nights. Mrs. Collier slipped and fell on the floor of the reception room. She had walked over the place where she fell several times that morning in going to the desk and up the stairs. Mrs. Collier sat in the reception room for some two hours and observed the floor. Mrs. Collier testified that the floor "was just nice and polished, * * * had a well-kept floor * * * it was nicely waxed * * * that it was a well kept linoleum floor * * * there was a maid around there working all the time * * * it was just a floor covered with linoleum and was waxed * * * that it was glossy, I suppose it was waxed * * * the way my floors look when I wax them."

Mrs. Collier's husband, Troy W. Collier, testified that the floor was the same all over, and that there was no difference in the place where his wife fell and other parts of the floor of the reception room. He further testified the "whole thing was slick; every place I noticed was." Both appellees testified that the floor was dry, that there were no liquids or damp substances on the floor, that after Mrs. Collier fell there was a dry, whitish powder upon the floor and the quantity of such powder was not shown. There is no evidence to show what kind of powder this was. Mrs. Collier testified "it looked like powder or dust, something, I couldn't say what it was. Mr. Collier described it as dry powder. Appellees testified that some of this powder or dust soiled Mrs. Collier's skirt. Mr. R. L. Schumacher, the agent in charge of appellant's San Antonio office, said, "I wouldn't say it was powder, it could be dust, Sir."

After Mrs. Collier fell she asked Mr. Schumacher, "What is wrong with your floor, Mr. Schumacher?" And after scraping on the floor with his foot, he replied, "Why, it is waxed." Mr. Schumacher called up Mrs. Collier several days after she was injured and told her in effect that appellant was liable for her hospital and doctor bills, he also stated the same thing to Mr. Collier.

Appellee called M. J. Townsend, as an expert witness, who testified that he was a floor finisher and had had considerable experience in that line of work and that "wax is almost universally used on floors." He described wax as being either a paste or an emulsion, the latter being the so-called water wax. He mentioned Johnson's Glo-Coat as an example of this type. He testified that he used either kind, whatever his customers wanted. He further testified that in the use of liquid waxes there is a tendency, because of the overlapping of the application with a brush, for the wax to become thicker in one place than at another, and that where wax of this type is applied too thick that a white powder would sometimes form on the surface of the floor which could be buffed off. However, he said that he could not say whether it would be more slippery where the wax was thicker than it was at other places. He said that the floor might be slippery all over, and that it would be too difficult for him to tell whether it would be more slippery at one

place than at other places. He said that the use of wax on floors has a tendency to make them slick and slippery. Townsend did not see the floor in appellant's reception room and did not attempt to testify as to its condition. Counsel for appellees attempted to ask Townsend a hypothetical question, but it was objected to and excluded by the trial court.

Jerry Moody, the porter, whose duty it was to wax the floors for appellant, was called as a witness and told in detail the method used by him in waxing the floors. He said he used three parts water and one part wax. He did not accurately measure the water but simply filled his bucket with water up to a certain point and then put in one-half can of wax. He put the wax on with a mop and in doing so there was an overlapping of the wax. The wax would dry in about thirty minutes. He did not buff the floor at appellant's office, but he did do so at Fomby's, where he also worked.

■ Under these facts, we sustain appellant's contention that his motion for an instructed verdict should have been granted, and that there is no evidence to support the finding that the defendant or his agent or employees were negligent in any particular which caused Mrs. Collier's fall.

■ It is well settled that the waxing or oiling of floors by business houses, offices and shopkeepers is a necessary and customary practice, is not negligence per se, and that a party injured by falling on a waxed floor must go further and establish by competent proof some specific act of negligence, either in the initial waxing or in the method of cleansing. Russell v. Liggett Drug Co., Tex.Civ.App., 153 S.W. 2d 231; Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374. There is no evidence tending to show either here. The porter, Moody, testified that he waxed the floor where Mrs. Collier slipped and fell every Thursday night and that it would dry in some thirty minutes. This floor had had from Thursday night until Saturday noon to dry. It had been swept four times Friday and twice Saturday before Mrs. Collier fell. Mrs. Collier had walked over this floor four times before she fell. Num-

erous persons had used it without falling. It is true that Moody testified that he did not rub or buff the floor after he waxed it, but this is not shown to be negligence. It is also true that Townsend testified that where wax is put on too thick when it dries it forms a powder. It is not shown that after the wax has dried and the powder has formed that a dangerous condition results. There is no evidence to show that appellant, his agent or employees were guilty of any specific act of negligence which proximately caused Mrs. Collier's fall.

■ Appellees present the contention that a higher degree of care is required of an optical company in the care of its floors than is required of an ordinary store or shop, because it is a place where only people with defective eyesight come. We cannot agree with this contention. Every storekeeper or other operator who invites the public to his place of business, while not an insurer of their safety while on the premises, must use ordinary care to see that his premises are reasonably safe for such invitees. Due care must be used to see that such premises are not only safe for the well and the strong but also safe for the weak, the lame and the blind. We see no difference between the degree of care required of proprietors of ordinary mercantile establishments as to the safety of their premises and that of proprietors of optical companies.

■ The sustaining of appellant's first point renders his other points immaterial, other than to state that the admission of liability over the telephone by the agent, Schumacher, was of no force and effect. It is not shown that Schumacher was employed, nor was it his duty, to adjust or settle claims against appellant. This statement was not made in the course of his employment and was nothing more than a legal conclusion. Tinker v. Yellow Cab Co., Tex.Civ.App., 74 S.W.2d 521; Southwestern Hotel Co. v. Rogers, Tex.Civ.App., 183 S.W.2d 751; Railroad Express v. Gaston, Tex.Civ.App., 91 S.W.2d 883.

The judgment of the trial court will be reversed and judgment here rendered that

appellees take nothing and pay the costs of this and the trial court.

Reversed and rendered.

SMITH, C. J., absent.