**EDWARDS et ux.**

v.

**MONTGOMERY WARD & CO., Inc.**

No. 4936.

Court of Civil Appeals of Texas.

Beaumont.

June 10, 1954.

Rehearing Denied July 21, 1954.

Adams, Browne & Sample, Beaumont, for appellants.

Cecil, Keith & Mehaffy, Beaumont, for appellee.

ANDERSON, Justice.

This suit was instituted by G. C. Edwards and his wife, Artelia, against Montgomery Ward and Company, Inc., to recover damages for personal injuries alleged to have been sustained by Mrs. Edwards on or about December 9, 1946, when she fell while shopping in the defendant's store in Beaumont, Texas. Trial to a jury resulted in an instructed verdict and a judgment in favor of the defendant.

The parties will be referred to as in the trial court, Mr. and Mrs. Edwards as plaintiffs, and Montgomery Ward and Company, Inc., as defendant.

The plaintiffs alleged that the manner in which the defendant had arranged a display of furniture made it necessary for Mrs. Edwards to follow the particular route she did in going to the place in the store where she was to transact her business; that there was a cracked and uneven place in the concrete floor along said route;

that such cracked and uneven place was obscured by the manner in which it had been painted over; that the floor was excessively slick because of a floor dressing that had been applied to it; and that the obscured defect and the slickness of the floor caused Mrs. Edwards to fall. They specifically alleged that the defendant had been negligent in the following respects: in permitting the crack to remain in the floor; in permitting the floor to remain uneven; in failing to inspect the premises; in painting the crack and the rest of the floor the same color, thereby concealing, without correcting, the defect; in applying the slippery dressing to the surface of the floor; and in unnecessarily routing customers over the defective place in the floor. These alleged acts of negligence were also alleged to have been proximate causes of Mrs. Edwards' fall and injuries.

The defendant's answer consisted of a general denial, a general allegation of negligence on the part of Mrs. Edwards as the proximate cause of her fall and injuries, and an allegation that Mrs. Edwards' fall and injuries were the result of an unavoidable accident.

The appellants predicate their appeal on four points. The first three pertain to the trial court's rulings on matters of evidence, while the fourth asserts that the trial court erred in peremptorily instructing a verdict in favor of the defendant.

The instructed verdict was proper in the circumstances, and appellant's fourth point is overruled. No evidence to show negligence on the part of the defendant reached the jury. The evidence that was permitted to go to the jury did no more than show that Mrs. Edwards fell and was injured while shopping in defendant's store.

The fact that an instructed verdict was proper in the circumstances does not, however, dispense with the necessity of passing upon the trial court's rulings whereby evidence tendered by the plaintiffs was excluded. Clearly, if tendered evidence which would have rendered the instructed verdict improper was erroneously excluded, and if

the error or errors have been properly preserved and presented for review, the case must be reversed and remanded for a new trial. This is so, even though the plaintiffs probably could have made out their case with evidence other than that tendered. Beyond requiring that proof be made by legal and competent evidence, courts have no authority to direct the manner in which litigants shall prove the facts upon which they rely.

Plaintiff G. C. Edwards was the only witness who in person testified in the presence of the jury. The plaintiffs undertook through him to place before the jury a description of the place where Mrs. Edwards fell. The witness was not present when his wife fell and had no first hand knowledge of where or in what circumstances she fell. His knowledge of these matters consisted altogether of what his wife and two men in the defendant's store had told him. One of the men (Tortoris) was admittedly an employee of the defendant. The testimony which was excluded, and the exclusion of which is now assigned as error, was with reference to what Tortoris and Mrs. Edwards had either shown or told the witness.

The witness Edwards had, it is true, gone to the third floor of defendant's store and personally observed it on the day following that on which his wife had fallen, but he was never asked merely to describe the premises as he had found them. In their material aspects, the descriptions which were called for, and the ones which the witness undertook to give, were always of the particular place he claimed had been pointed out to him by his wife and Tortoris as the place where Mrs. Edwards had fallen.

Appellant's points will be discussed in their inverse order.

Point three complains that the trial court erred in excluding testimony by G. C. Edwards that M. C. Tortoris had shown him the place where Mrs. Edwards fell.

The plaintiffs not only undertook to prove by the witness that the place where Mrs. Edwards had fallen was pointed out to him by defendant's employee Tortoris on the day following the date of the mishap, but undertook to have the witness identify and describe that place. They also offered to prove in this connection that Tortoris had at the same time represented that he saw Mrs. Edwards fall and helped pick her up.

These extra-judicial statements and acts attributed to Mr. Tortoris were obviously offered to prove the truth of the facts asserted; i. e., to prove that Mr. Tortoris had in fact seen Mrs. Edwards fall and had helped pick her up, and was therefore familiar with the place where she had fallen, and to establish that Mrs. Edwards had in fact fallen at the place designated by Mr. Tortoris. The testimony, therefore, was hearsay, and was inadmissible unless it falls within one of the exceptions to the hearsay rule. The appellants apparently recognize this fact, but argue that the testimony should have been received in evidence as admissions of the defendant, made through one of its agents while the latter was acting within the course and scope of his employment.

■ On the record before us, we are unable to agree with this argument. No authority was shown for Mr. Tortoris to say and do in behalf of the defendant the things about which the witness was prepared to testify. No contention is made that he was thereto expressly authorized, and the evidence was insufficient to clothe him with implied authority. There was no evidence from which it can be inferred that he was the alter ego of the corporation, or that he was authorized to adjust or settle claims for damages for personal injuries, or in any manner to represent the company in connection with such claims. Construed most liberally in favor of the appellants, and without discounting the conclusions of the witness Edwards, the evidence did no more than show that Mr. Tortoris was employed by the defendant as a salesman who was "in charge of the rug department" on the third floor of defendant's store, the third floor being the one on which Mrs. Edwards fell. This showing of employee status was not sufficient from which to infer his authority to make assertions or admissions on

behalf of his principal affecting the latter's rights or liabilities in regard to the subject matter of this suit. See: Texas Law of Evidence (McCormick & Ray) p. 658, § 508; 31 C.J.S., Evidence, § 346; 4 Texas Law Review 506; Rogers v. Collier, Tex.Civ.App., 223 S.W.2d 560, err. ref. The acts and statements of Mr. Tortoris which plaintiffs sought to prove were not a part of the res gestae, but were mere narrations of past facts. They were not performed or made by him in connection with the discharge of any duty he was employed by the defendant to perform, and we are of the opinion that the testimony regarding them was inadmissible as evidence.

By their second point the appellants complain that the trial court erred "in placing an impossible burden on appellant by requiring (as a prerequisite to testifying to what he saw at appellee's store) that appellant prove not only the identity and capacity of store employees who were present when Mrs. Edwards fell, but also the fact that they were present, while at the same time excluding all evidence tending to show that they had been there when she fell."

■ We consider this point also to be without merit. As we construe the record, the court did not at any time require proof of the presence, identity, or capacity of any of defendant's employees, as a prerequisite to permitting the witness merely to describe defendants' premises as he himself had seen them. It merely ruled that the witness would not be permitted to give in evidence hearsay testimony without first identifying the person about whose acts and statements he proposed to testify, showing such person's relationship to the defendant, or his authority to speak or act for the defendant, and showing such person's testimonial knowledge; and that these matters could not be shown by more of the same hearsay testimony. These rulings were proper in the circumstances.

■ The witness had by his own testimony already shown himself to be without personal or testimonial knowledge of the location of the place where his wife fell, and he proposed to fix this location by what another had told him. The proposed testimony was obviously hearsay, and was inadmissible unless under one of the exceptions to the hearsay rule. Proper objection to its reception in evidence had been timely made, and was prima facie subject to be sustained. In the circumstances, therefore, the burden rested on the plaintiffs, as the ones offering such testimony, to establish or demonstrate its admissibility under some exception to the hearsay rule. Johns v. Northcutt, 49 Tex. 444, 455. In other words, before being entitled to have such testimony received in evidence, it was necessary, at least, that plaintiffs prima facie prove by legal and competent evidence all facts essential to show that it came within one of the exceptions. Therefore, since plaintiffs undertook to bring the testimony within the exception which under a proper state of facts entitles hearsay admissions of an agent to be received in evidence, it was only proper that they be first required to identify in some manner the supposed agent, and to prove by legal evidence the existence of the relationship of principal and agent, the authority of the agent, the agent's testimonial knowledge, and the circumstances attending his acts and declarations that were to be placed in evidence. These were not matters which in this instance could be properly proved by the tendered additional extra-judicial statements of the same person.

By their first point the appellants complain that the trial court erred "in refusing to permit appellant G. C. Edwards to describe, from his own personal observation, the premises where his wife fell."

■ With immaterial exceptions, the witness Edwards, as we have previously stated, was never requested nor directed, by having his attention directed to the premises as such, to describe any area of the third floor of the defendant's store. Instead, despite the fact that he had no personal knowledge of its location, he was consistently requested or directed to de-

scribe the place where his wife fell, or else to describe the place which had been pointed out to him by his wife or by Mr. Tortoris as the place where she fell. The location of the place where Mrs. Edwards fell had not been independently established by other evidence. The plaintiffs were endeavoring to establish it by proof of the extra-judicial statements and acts of Mr. Tortoris. The method they adopted for translating the gestures of Mr. Tortoris into words was, in the main, that of having the witness describe the physical aspects of the place toward which Mr. Tortoris had pointed. Therefore, even though the witness had personal knowledge of the physical aspects of the place he offered to describe, such description became or was hearsay when offered, as it was, for the purpose of identifying the place Mr. Tortoris had pointed out, as the place where Mrs. Edwards had fallen. While the testimony may have been intended in some instances to serve the two-fold purpose of both identifying and describing the location, it cannot be disassociated from the purpose which rendered it improper evidence.

We do not find in the record any description, free of this fault, of a defect in the defendant's premises sufficient to raise an issue as to defendant's negligence. The only proffered testimony of the witness which might have been sufficient for this purpose was the following, given after the witness had testified that an aisle which had a turn in it was formed by a display of furniture, and led from the elevator to the rug department; and in its essential qualities it demonstrates, we think, the fault we have mentioned:

"Q. *Where is the place* with reference to the corner of the aisle or the place at which she had to make a turn, where was that? A. Well, that was about fifteen feet from the elevator, I suppose. I didn't measure it, but there was a seam in the cement.

"Q. *You are talking about the corner of the place where she fell?* A. *The place where she fell at the corner, yes, sir.*

"Q. *She fell at the corner, is that it?* A. *Where she made her turn.*

"Q. *Is it just before you get to the corner of the curve from the elevator or just after she got to the corner?* A. *She fell just after she got to the corner, she tried to make the corner.*

"Q. *You mean the place the man showed you* would be just past the corner, if a person would go from the elevator to the rug display in the back, isn't that correct? A. *That is correct.*

"Q. *Describe the appearance of this place.* A. Well, I went up there and from what I could see the floor had been painted, it was slick and there was a gap where the cements lapped, there is a junction there, a hole there that deep and about that wide. It is a high place in the seam.

"Q. Will tell us how much, in terms of inches what it is, a quarter of an inch? A. I presume that hole in the floor there is every bit of three quarters of an inch deep and it is right in the seam of the cement.

"Q. Right in the seam of the cement? A. That is right.

"Q. Is there any way you can describe the type of floor that exists up there? What did exist at the time on the defendant's premises there on the third floor, can you tell us what type of floor it was? A. Well, it appeared to be nice floor, it was painted slick with a green, a light green paint, and it looked glassy, that is the way it appeared.

"Q. Do you know what—was it wood, or brick? A. It was cement, a cement floor painted over.

"Q. A cement floor. Was it in sections or all in one piece? A. It was in sections, I suppose. I don't know much about cement, but it was in seams like this stuff here.

"Q. You are pointing to— A. The ceiling.

."Q. The noise-proof stuff we have in the ceiling, that is in squares, is that right? A. Yes, sir.

"Q. Were they that size squares, or larger. A. Oh, they was bigger squares than that.

"Q. Bigger, and did they have seams running at the sides of the squares like you see in this ceiling? Did they have seams? A. That is correct.

"Q. *In the place where she fell* were the blocks even, were the square blocks even or uneven? A. I noticed that one of them was about one eighth of an inch higher at one place on the side where this cement lapped at the seam at the corner where the four of them comes together there.

"Q. When you talk about the corner you are talking about the place where the four corners or four of those cement squares would come together, is that correct? A. That is correct.

"Q. Can you draw a diagram of that and show the Court how that looks? A. I think I could. I am not much of an artist, but I believe I could.

"Q. See if you can indicate by drawing here *the type of place that was indicated to you by Mr. Tortoris as the place where your wife fell.* A. (Witness draws on paper.) I am not trying to put all the amount of stuff that was on there, but this stuff represents furniture, the little squares I made, and that is the way it looked to me when I went up there.

"Q. All right. Of course, this turn you show to the rugs is not perfectly square, you intended it to be a square turn there? A. Yes, sir

"Q. We will show this to the Court here and we would like to have that made as an exhibit for the bill, Your Honor. [The exhibit was made a part of the record.]

"Q. Now you have drawn us a picture here, drawn a picture of the pathway a person would go from the elevator to the rugs? A. That is right.

"Q. And you also indicated on here, or can you indicate the appearance of the spot *where you were shown there by Mr. Tortoris that she fell? Have you got that shown on there, or can you show it?* (Witness draws on paper.) A. *There is an arrow pointing there.*"

In support of their bill of exceptions, the plaintiffs offered testimony by Mrs. Edwards, apparently for the purpose of "connecting up" the place where she fell with the place Mr. Edwards had described. However, conceding, for the purposes of this discussion, that her testimony was prima facie sufficient to show the connection—and it probably was—it did not remove the objectionable, hearsay aspects of Mr. Edwards' testimony insofar as the statements and acts of Mr. Tortoris were concerned. The descriptive portions of his testimony were never tendered, free of this vice, and remained inadmissible.

Because of the confused state of the record, we have also considered the testimony of Mrs. Edwards which was offered in connection with the bill of exceptions to see whether, standing alone, it would have been sufficient to have carried the case to the jury, and we have concluded that it would not. It tended to show that the floor was slick because of a floor dressing that had been applied to it, but we do not consider it sufficient to have raised an issue of negligence on that score. See: Rogers v. Collier, Tex.Civ.App., 223 S.W.2d 560; Springall v. Fredericksburg Hospital & Clinic, Tex.Civ.App., 225 S.W.2d 232; Russell v. Liggett Drug Co., Tex.Civ.App., 153 S.W.2d 231.

It follows from what we have said that the judgment of the trial court must be affirmed.

Affirmed.

438

## On Rehearing.

The following statements in appellants' motion for rehearing have prompted us to make further brief comment on the record: (1) "Appellee was not disputing the fact that Mrs. Edwards fell, nor was it disputing as to the place where she fell * * *." (2) "The Appellee stated in open court that it was not questioning the authority of Tortoris, and stated that its objection was not based upon the question of whether or not this was an admission of an agent, and made clear at the time of the trial that its objection was on the proposition that the statements or actions of Tortoris could not be an admission simply because they were not against interest." (3) "In effect, the court is affirming the judgment of the trial court on a point which was not even involved in the court below nor is it involved here." (4) "That the things which this court apparently regards as harmful or objectionable in the testimony were removed from dispute by open court statements of counsel for the appellee wherein he stated that the appellee was not contesting or questioning the authority of Tortoris, nor was it questioning the fact that Mrs. Edwards fell."

■ It is true that defense counsel stated in the trial court that he was not contending that Mrs. Edwards did not fall, and in our original opinion we treated her fall as a proven fact. We find nothing in the record, however, to support appellants' contention that appellee was not "disputing as to the place where" Mrs. Edwards fell. The appellants have not directed our attention to any agreement between counsel, or to any admission by the appellee, that Mrs. Edwards fell at any particular place, nor has a careful search of the record disclosed anything that could be construed as such an agreement or admission. The plaintiffs were under the burden of proving not only a defect in the floor, but causal connection between such defect and Mrs. Edwards' fall and injuries. The record discloses nothing that was said or done by defense counsel which could be construed as minimizing that burden. On the contrary, from the beginning and throughout the trial, defense counsel, by repeated objections, insisted that the plaintiffs be required to make out their case by legal and competent evidence. In addition, defense counsel stated in open court that one of his main reasons for being so insistent upon his objections to the hearsay testimony was that he anticipated that the hearsay would fix the place of Mrs. Edwards' fall at a different location from that at which Mrs. Edwards herself had fixed it when testifying on deposition. In this state of the record, it would be presumptuous in the extreme for us to say that the rules of evidence should have been relaxed and inadmissible evidence admitted because the evidence bore only on an issue which was undisputed.

We find of record only two statements by defense counsel which even tend to support the second of appellants' allegations as above set out. The first of these was the following: "Any statements made by any agent or any proper representative of the defendant can be taken as an admission against interest is an exception to the general rule that hearsay is not permitted, but a statement that is not an admission against interest, but merely whether they were there, something of that nature, unless it is an admission against interest, is still hearsay and as such is not admissible." This statement was made by way of argument to the court in support of an objection that a question which had been propounded by plaintiffs' counsel called for hearsay. At the particular stage of the proceedings, Mr. Tortoris had not been identified as a person to whom the witness Edwards had talked. The latter had merely testified that he talked to two men in the defendant's store. He had also testified to certain circumstances tending to show that these two men were employees of the defendant. He was then asked the following question: "And did these men indicate to you that they had been there the afternoon before?" At this point defense counsel made objection that the question called for hearsay, and the above statement followed. As already remarked, the statement was made

by way of argument in support of the objection. The obvious intent of defense counsel was to convey the thought that even though one of the recognized exceptions to the hearsay rule is that in some circumstances admissions of an agent may be admissible against his principal, the particular testimony sought to be elicited in this instance could not come within such exception, because it could not qualify as an admission. There is nothing in the statement which can be construed as an admission that Mr. Tortoris was authorized to speak and act for the defendant in the respects about which the witness later undertook to testify. The actual objection which had been made to the proposed testimony was the matter before the court to be ruled on. The not-altogether-accurate statement of law made in connection therewith by defense counsel, by way of argument and illustration, was in the nature of surplusage. It was not binding on the defendant in other circumstances at later stages of the trial.

The other statement by defense counsel to which we referred occurred after Mr. Tortoris had been identified as one of the two men to whom Mr. Edwards talked in defendant's store. The witness Edwards had been asked: "Did he [Tortoris] indicate to you that he was there when your wife fell the day before?" Defense counsel had again objected to the question as calling for hearsay. The following then passed between Mr. Mehaffy, counsel for the defendant, and Mr. Sample, counsel for plaintiffs:

Mr. Sample: "He made his original objection, Your Honor, which was [that] there was no showing that this man he talked to was an employee of the company."

Mr. Mehaffy: "I pass over that because there was a man Tortoris there, I pass over that."

Mr. Sample: "He was an employee of the Company, was he?"

Mr. Mehaffy: "Sure he was. I am not going to be technical about that. I could have objected to that he hasn't met the burden of proof that Tortoris was an agent, servant and employee of the company, acting in the scope of his employment, but that is a technical objection. My objection now goes to the entire merits of the thing. Let's assume that Tortoris was an employee of defendant and on duty at the time. Nevertheless that was hearsay. The testimony now is what Mr. Edwards said Tortoris said. There is no showing that it falls within any exception to the hearsay rule."

We are unable to see in these statements of defense counsel an admission that Mr. Tortoris was authorized to act and speak for his employer in respect to the matters about which Mr. Edwards undertook to testify. The objection which defense counsel had made and the foregoing statements themselves were to the contrary. The statement amounted to nothing more than an admission that Mr. Tortoris was an employee of the defendant and on duty at the time Mr. Edwards talked to him. It was in no sense an admission that he was authorized to make admissions on behalf of his employer regarding Mrs. Edwards' fall. In our original opinion we treated of Mr. Tortoris as an employee of the defendant and as manager of the latter's rug department on the floor where Mrs. Edwards fell. Once again it was the objection which had been made that was before the court to be ruled on, and it raised the question of Mr. Tortoris' particular authority.

We adhere to the views expressed in our original opinion; and with the foregoing additional explanation of the record that is before us, the appellants' motion for rehearing is overruled.