**S. H. KRESS & COMPANY, Appellant,**

v.

**H. A. TELFORD, Appellee.**

No. 15956.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1957.

Rehearing Denied Feb. 6, 1957.

David M. Kendall, Jr., Pinkney Grissom, Dallas, Tex., Alexander Gullett, Denison, Tex., Thompson, Knight, Wright & Simmons, Dallas, Tex., for appellant.

F. Neilson Rogers, Sherman, Tex., Rogers & Rogers, Sherman, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

This suit was brought by appellee to recover damages for injuries sustained by his wife when she slipped and fell in appellant's store at Sherman, Texas, on October 5, 1954. Trial to a jury resulted in a verdict for appellee for $5,000.00, and from the judgment entered thereon this appeal is taken. The only error specified, raised by motions for directed verdict and judgment n. o. v., relates to the sufficiency of the testimony to show any negligence of appellant supporting the verdict.

The testimony, hereafter summarized and quoted in most pertinent part, shows that at about 2:30 P.M. on the date of her injury Mrs. Telford, then 61 years of age, entered appellant's store fronting on Travis Street in Sherman, Texas; and that she walked straight to a rear counter where she bought a paint brush, after which she turned around and started back out when, according to her own testimony, she "hit this slick place and fell." She further testified that, although she was looking where she was going and walking straight ahead, she

did not notice any slick appearance or condition of the floor until both feet "slipped out from under me * * * and I hit on my * * * left hip," and that the floor was definitely slick at the place where she fell.

She was taken in an ambulance to a hospital, where her leg was packed in sand bags and she was given sedatives through-out the night to relieve her pain. The following morning she was operated upon by Dr. Vernon Tuck, who placed a pin in her hip, which was subsequently removed in a second operation on April 28, 1955, after some seven weeks' hospitalization and a prolonged convalescence. The medical testimony of both physicians who testified for appellee, Dr. Tuck and Dr. Boyd, is undisputed that Mrs. Telford has sustained a severe and painful permanent injury, and shows that she is disabled from performing normal household duties and from following her former, irregular employment as a dressmaker.[1]

Appellant's store manager, O. S. Freeman, testified, as an adverse witness for appellee, that it was his custom to apply a product called "myco sheen" to the floor of appellant's store "about every four weeks," and that this substance had been applied to the floor after its closing on the Saturday evening preceding the Tuesday on which Mrs. Telford sustained her injury. He further testified that, during his sixteen years' service with Kress stores, he had made Monday morning inspections following every fourth weekend application of myco sheen, to see whether any "puddles", inferably of myco sheen residue, were still left on the floor. This portion of the record contains a further stipulation of counsel to the effect that myco sheen had been used in appellant's Sherman, Texas, store for eleven years.

The witness W. O. Carver, who owned and operated a floor covering and finishing service in Sherman, next testified for

appellee that over a period of about a week he had made six applications of myco sheen to an unfilled maple board of the type used on the floor of appellant's store, as a result of which the board had become completely saturated; that, while the surface of the board did not so appear, it actually was slick; and that repeated applications of this substance would likewise tend to saturate any unfilled flooring like a sponge, until it would not be absorbed so readily as before, and would cause the surface to remain oily and slick.

A commercial chemist from Fort Worth, Texas, Henry Heltman, next testified for appellee that his chemical analysis of myco sheen showed that it was composed of some type "vegetable oil," and that a further test revealed it was absorbed when applied to a porous substance, but remained on the surface and did not harden or evaporate when applied to a non-porous substance. Appellee then took the stand momentarily to corroborate his wife's former testimony as to her disability since the injury, after which she resumed her testimony to identify the leather sole and heel shoes which she was wearing when she fell. Appellee next introduced a deposition of Mrs. Della Wright, which stated that the witness had been in appellant's store when the floor was slick or "looked slick," and for that reason she was more careful when walking in that store than in others. A further deposition by Mrs. Ruth Mullins stated that she had also sustained a fall in appellant's store on November 7, 1946, while wearing shoes with leather soles and rubber heels; and that she had also not noticed any slick appearance of the floor beforehand, but she "just knew it was slick when she fell." A still further deposition by a Mrs. Swindle contained testimony to the effect that she had also slipped twice on the floor of appellant's store, and that "it was just as slick as glass."

1. Mrs. Telford's medical expenses were stipulated by counsel upon the trial, and the permanent nature of her disability is not here contested. For this reason, appellant makes no complaint that the damages awarded were excessive, but as previously noted, insists only that no actionable negligence was proved.

The witness, O. S. Freeman, as appellant's first witness below, testified that he had cut a small piece from that portion of the store floor where Mrs. Telford had fallen, which he identified and which was introduced into evidence; that it was in that same clean, dry condition in which he found it on the date of her injury, and that he then verified its good traction quality by rubbing his foot and hand upon the floor in the presence of a number of store employees and a local police officer, Franklin. He further admitted that the manufacturer's instructions as to saturating the mops with two cups full of myco sheen were not followed. He also attempted to recant in part his pre-trial testimony by deposition as to his practice of inspecting for "puddles" on those Monday mornings following every fourth weekend application of myco sheen, stating that his use of the word "puddles" was unfortunate and incorrect, and that such inspection was made only to ascertain whether the application had cleaned the floor. On cross-examination, the witness denied ever having permitted any soaking of the floor of his store with myco sheen, contrary to the manufacturer's instructions, though he admitted that some soaking in violation of those instructions might result if a "puddle" of myco sheen were left standing over the weekend.

Two other defense witnesses, Mrs. Puckett and Mrs. Ingram, who were working as employees of appellant's store at the time of Mrs. Telford's injury and saw her fall, testified that the floor was not slippery or slick where she fell. The police officer, Franklin, corroborated Manager Freeman's testimony as to his having been asked to observe the dry condition of the floor where Mrs. Telford fell, and stated that he also rubbed his foot over the floor and did not find it slick to his touch. On cross-examination, however, this witness admitted that he was then wearing rubber heeled shoes, which might have made the difference between the result of his test and Mrs. Telford's experience.

James Rice, who was employed as stock clerk at appellant's store at the time of Mrs. Telford's injury but was working for the Sherman Water Department at the time of trial, testified on appellant's behalf that he helped apply the myco sheen on the Saturday evening preceding the Tuesday on which Mrs. Telford sustained her injury, but that he did not see her fall or examine the floor afterwards. He further testified that, as stock clerk, it was his duty to drag baskets two feet in length with wooden runners, while such baskets were heavily laden with merchandise, along the floor of appellant's store to replenish stock sold from the counters. He admitted that these baskets would slide across the floor "reasonably good," even when he was hauling toilet goods weighing thirty-five or forty pounds. Billy Johnson, Assistant Manager of the local Montgomery Ward Store, and James Sanford, Manager of the local McClellan's Variety Store, then testified for appellant that their stores had applied myco sheen to their floors for a number of years, and that such treatment had not made them slick. On cross-examination, however, Johnson admitted that his store had pine flooring, which was "probably rougher" than other flooring. Sanford also testified that he followed the manufacturer's instructions as to the product's proper application, distinguishing his experience from that of appellant's floor manager, Freeman, from whose testimony the jury may have inferred some deviation from the instructions.

Finally, Earl Hamm, who had been employed for twelve years as an inspector for the Masury Young Company, the manufacturer of myco sheen, testified that its product was known as a fine sealer for wood floors, as well as a cleaner which controlled dust. He further testified that it was made of solvents and gums, though its exact chemical constituency was a trade secret unknown even to him; and that, in so far as he knew, it did not contain any oil. This witness illustrated his testimony by soaking a handkerchief in myco sheen and passing

it to the jury for inspection, after which he demonstrated its application and effect on that section of flooring from appellant's store which had previously been introduced in evidence as a physical exhibit.[2] Hamm further stated that his application actually imparted more traction to the wood than it had before, as his Company's tests had shown many times myco sheen would do. This witness then recounted the extensive use of myco sheen in this country throughout chain stores and industry, including its use by such well known companies as Sears & Roebucks, Atlantic & Pacific Tea Company, Montgomery Ward, Newberrys, Greens, Grants, and Safeway Stores. On cross-examination, Hamm admitted that one of his duties was to act as trouble-shooter for his Company's customers, and to be available to testify in their behalf in such lawsuits. He conceded that he had actually so testified recently in at least two other such myco sheen cases.

■ It is well settled that appellant was not an insurer of Mrs. Telford's safety, but only owed her the duty to exercise ordinary care. See Moss v. Safeway Stores, 5 Cir., 185 F.2d 966, 967; Rogers v. Collier, Tex.Civ.App., 223 S.W. 2d 560, 563; Smith v. Safeway Stores, Tex.Civ.App., 167 S.W.2d 1044, 1046; Russell v. Liggett Drug Co., Tex.Civ. App., 153 S.W.2d 231, 233; 100 A.L.R. 744. Furthermore, negligence in this type case is never presumed from the mere fact of accidental injury. Montgomery Ward & Co. v. Sewell, 5 Cir., 205 F.2d 463, 467; Interstate Circuit, Inc., v. Le Normand, 5 Cir., 100 F.2d 160, 161; Wells v. Texas Pacific Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660, 662.

■ Appellant insists that the proof is so conclusive of a widespread custom and practice of the use of myco sheen, and its suitability as a nonhazardous floor cleaning substance for stores like its own, that it must be held, as a matter of law, to have discharged its duty to Mrs. Telford by using such product. This contention appears to be a renewal of appellant's insistence, rejected by this Circuit in a recent per curiam decision in a Mississippi myco sheen case, S. H. Kress & Co. v. Handorf, 5 Cir., 234 F.2d 526, wherein the evidence was held sufficient to raise an issue of negligence for the jury. We now reaffirm our tacit holding in the Handorf case, supra, that the proven custom of using myco sheen for such purpose, no matter how widespread, is not conclusive against a finding of negligence, if that finding is supported by evidence from which a jury might reasonably have inferred either that it was unsuitable for use on the particular floor, or that it was improperly applied or negligently maintained. See S. S. Kresge Co. v. Holland, 6 Cir., 158 F.2d 495, 498. While such evidence was admissible on the issue of whether appellant had exercised ordinary care in the selection of such a product, it was not controlling. As Mr. Justice Holmes stated many years ago in Texas & Pacific Ry. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905, "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Williams v. Atlantic Coast Line R. Co., 5 Cir., 190 F.2d 744, 747; Great A. & P. Tea Co. v. Garner, Tex.Civ.App., 170 S.W.2d 502, 505; 65 C.J.S., Negligence, § 232, p. 1047 et seq.; 38 Am.Jur., Negligence, § 34, p. 679 et seq.

■ In the light of our résumé of the entire testimony, and the above stated principles, we have no difficulty in concluding that a jury question was presented on the issue of whether myco sheen was negligently applied, so as to create a condition causing Mrs. Telford's injury. Surface v. Safeway Stores, 8 Cir.,

2. Apparently, none of the physical exhibits were designated for inclusion in the record or transmission to this Court as an aid in the consideration of the appeal, though it seems to us they must have appreciably affected the jury's consideration of the negligence issue below.

169 F.2d 937, 941. True, there was also convincing testimony from which the jury might have found otherwise, just as the Eighth Circuit noted in the case last cited, but the fact remains that the jury chose to believe that testimony which tends to support the verdict, and that was its prerogative.

Affirmed