Thomas SANTOMARCO, Libellant,

v.

UNITED STATES of America,
Respondent,

and

American Stevedores, Inc., Respondent.

No. 234, Docket 25833.

United States Court of Appeals
Second Circuit.

Argued March 8, 1960.

Decided April 5, 1960.

Morris Cizner, New York City, Zimmerman & Zimmerman, New York City, for libelant-appellee, Thomas Santomarco.

Walter L. Hopkins, New York City, George Cochran Doub, Asst. Atty. Gen., Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., Samuel D. Slade, Leavenworth Colby, Benjamin H. Berman, Attorneys, Department of Justice, Washington, D. C., for the United States.

256

Albert S. Commette, New York City, Garvey & Conway, New York City, for impleaded respondent, American Stevedores, Inc.

Before LUMBARD, Chief Judge, and L. HAND and LEWIS, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree in the admiralty of the District Court for the Eastern District of New York holding the United States liable to the libellant, a longshoreman, for injuries suffered on board the ship, "Henry Gibbins," and also holding the American Stevedores, Inc. (which we shall call "Stevedores") liable to the United States for indemnity under a contract between the parties. The facts were as follows.

The ship, "Henry Gibbins," owned by the United States was being loaded in Brooklyn, her starboard side against the pier. The libellant was a longshoreman, employed by "Stevedores," and was at work as a winch operator at the forward hatch (No. 1). At some time before four p. m. that day he had been at work at an after hatch, No. 4, and had moved to the forward winch. There was a winch at hatch No. 2, that had leaked oil, either because it had been overfilled, or was mechanically injured. The oil ran from the bottom of the winch across the deck, under some pontoons temporarily placed nearby, and thence to the starboard rail. Between the winch and the nearest pontoon the oil had spread to a streak six inches wide, and it had been tracked to a greater width by the footprints of a number of persons who had passed between the winch and the pontoons during the afternoon. Earlier in the afternoon the libellant had walked through this passage on his way forward from hatch No. 4 to hatch No. 1, and at about six o'clock, wishing to get a drink of water, he again walked through it to hatch 4. On coming back with water for another workman he walked through the passage a third time, and that time he slipped on the oil and fell on the deck, injuring his head, back and left hip.

Judge Zavatt held the United States liable under the maritime law because the libellant's injuries were the result of an unseaworthy condition of the deck, but he also held that the libellant had been guilty of contributory negligence "because he proceeded through an area of known danger without reporting or acting to remove the oil from the deck." He made no finding as to whether the libellant could have avoided the spot of oil by bringing back the water on the port side. Because of the libellant's contributory negligence he reduced his recovery by fifty per cent.

The liability, so reduced, the judge imposed on "Stevedores" under its contract to indemnify the United States, which therefore became only secondarily liable. That contract provided that "Stevedores" would "hold the Government harmless from any loss * * * for bodily injury * * * of persons"; but to this engagement there were two exceptions of which only the first is relevant here. This exception absolved "Stevedores," if "the unseaworthiness of the vessel or failure or defect of gear or equipment furnished by the Government contributed jointly with the fault or negligence of the Contractor * * * and the Contractor, its officers, agents, and employees, by the exercise of due diligence could not have been [sic] discovered such unseaworthiness or defect of gear or equipment or through the exercise of due diligence could not otherwise have avoided" the injury. In this case it was the "unseaworthiness" of the ship that "contributed jointly with" a "fault or negligence of the contractor," because the spot of oil was evident to employees of "Stevedores" other than the libellant, who were at work thereabouts, and who did not call the attention of any of the ship's company to it, or ask to have it wiped up or sprinkled with sawdust. Moreover, if that would not have "avoided" the injury—which there is every reason to suppose that it would—by the "exercise of due diligence" they could have wiped up the oil themselves. Hence "Stevedores" is liable for any recovery.

The libellant appeals from the award because, as we have said, the judge allowed him only half the damages suffered. He argues that he was not negligent, and that in any event the amount allowed for pain and suffering was insufficient. As to contributory negligence, like all negligence, it presupposes a choice between conflicting values, and in the case at bar we need not say that, if the libellant had had to choose between an immediate recovery of property of value and taking the risk of the slippery deck, he would have been negligent. Although it is customary to say that negligence is a question of fact, it always involves an appraisal of values, and while ordinarily values are to be appraised by the standard commonly accepted in the circumstances, that is not their inevitable measure. We need not, therefore, consider whether most persons in the libellant's position would have used the passage. For argument we will assume that they would, but it does not follow that it was not negligent to do so. "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Holmes, J., Texas & Pacific Railway Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905. "Ordinary care, then * * * implies the exercise of reasonable diligence, and reasonable diligence implies, as between the employer and employe, such watchfulness, caution, and foresight as, under all the circumstances of the particular service, a corporation controlled by careful, prudent officers ought to exercise." Wabash Railway Co. v. McDaniels, 107 U.S. 454, 460, 2 S.Ct. 932, 938, 27 L.Ed. 605; S. H. Kress & Co. v. Telford, 5 Cir., 240 F.2d 70, 73; The T. J. Hooper, 2 Cir., 60 F.2d 737, 740. It appears to us that, however likely it may be that the ordinary longshoreman would have taken the risk of walking on the oil spot, to do so involved an obvious hazard and was an impermissible imprudence.

As to the insufficiency of the award of $1,000 for suffering and permanent injury, it is idle to seek any objective test, even more idle than to seek an objective test of negligence itself. It is true that at times we have increased such awards, as for example, United States Fidelity & Guaranty Co. v. United States, 2 Cir., 152 F.2d 46; but that is only in extreme cases. Carroll v. United States, 2 Cir., 133 F.2d 690, 693, 694; Lukmanis v. United States, 2 Cir., 208 F.2d 260. In the case at bar, were I to decide the issue alone, I should raise the award, but my brothers think that the evidence is not strong enough to justify such an unusual exercise of appellate power. For that reason the decree will be affirmed.

Decree affirmed.