John ORLANDO, Libelant,

v.

PRUDENTIAL STEAMSHIP CORPORATION, Respondent,

v.

AMERICAN STEVEDORES, INC., Respondent-Impleaded.

United States District Court
S. D. New York.
March 15, 1962.

Solomon J. Cohen, New York City, for libelant; Jacob Rassner, New York City, of counsel.

Stapleton, Flynn & Lilly, New York City, for respondent; John J. Purcell and Robert G. Farrell, New York City, of counsel.

George J. Conway, New York City, for respondent-impleaded; Michael J. Kenny, New York City, of counsel.

PALMIERI, District Judge.

Libelant, a marine carpenter, has sued in admiralty to recover damages for personal injuries sustained when he slipped on grain on the deck of respondent's vessel. He had just stepped off the gangway and was approaching a fuse box to obtain electric current for his mechanical saw when the accident occurred. A decree is allowed against the respondent shipowner, based upon a finding that the presence of grain on the deck created an unseaworthy condition which was the proximate cause of the accident and the resulting injuries. A claim for recovery over against the stevedoring company has been urgently pressed by the steamship company. The right to recovery over on the facts before me constitutes the most difficult aspect of this case. I have, upon reflection, decided that recovery over cannot be allowed.

■ Since no express agreement of indemnity was made by the stevedoring company for the benefit of the shipowner, the stevedoring company can be held liable only if it breached its implied warranty to perform in a workmanlike manner. See Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 125, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In this case the only fault that could be charged to the stevedoring company is the failure to board the ship and inspect the work areas for possible unseaworthy conditions prior to commencing the work.

It is reasonable to infer from all of the credible evidence that the grain was present and that the unseaworthy condition existed at or about the time the vessel docked and the gangway was made secure at 11:40 A.M. on February 17, 1960, approximately one hour and twenty-five minutes before the plaintiff's

accident. During that period of time American Stevedores, Inc. had access to the ship and to the work areas to which the longshoremen and marine carpenters were to be assigned by it. It is probable that had the stevedoring company boarded the ship and inspected the work areas prior to commencing work, it would have discovered this condition. It did not, however, board the vessel until 1:00 P.M., or about five minutes before the accident occurred.

A review of the cases cited by the steamship company impels me to conclude that they do not sustain the proposition that the opportunity to inspect prior to boarding a vessel where work is to be undertaken, imposes a duty to do so. In Hugey v. Dampskisaktiesel-skabet International, 170 F.Supp. 601 (S.D.Cal.1959), affirmed sub nom. Metropolitan Stevedoring Co. v. Dampski-saktieselskabet International, 274 F.2d 874 (9th Cir., 1960), cert. denied, 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147, the foreman in charge of the work was actually aware of the unseaworthy condition. In Santomarco v. United States, 277 F.2d 255 (2d Cir., 1960), cert. denied sub nom. American Stevedores v. United States, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed. 2d 52, the contract specifically provided that the stevedoring company would indemnify the shipowner unless the unseaworthiness of the ship or equipment contributed jointly with the fault of the stevedore to the injury and the stevedoring company could not have discovered such unseaworthiness by the exercise of due diligence. While it is true that in Calderola v. Cunard Steamship Co., 279 F.2d 475 (2d Cir., 1960), cert. denied sub nom. Cunard Steamship Co. v. Clark, 364 U.S. 884, 81 S.Ct. 172, 5 L.Ed.2d 104, Chief Judge Lumbard noted that the unseaworthy condition could have existed only a short time prior to the accident, he did not say that evidence of its existence for a longer period would have been sufficient *ipso facto* to impose liability on the stevedoring company, or that the stevedoring company had a duty to in-

spect prior to commencing work. "Absent knowledge or constructive notice of the presence of the grease, the stevedore could only have breached its contractual duty if the conduct of its employees created the dangerous condition." Calderola, supra, 279 F.2d p. 478.

Thus, while it might be thought desirable to impose upon stevedoring companies a duty to inspect prospective working areas on shipboard before directing employees to commence work, I can find no authority for the proposition that in failing to do so the stevedoring company has failed to discharge its duty to perform in a workmanlike manner.

## FINDINGS OF FACT

1. On February 17, 1960, the SS San Angelo Victory was secured starboard side to Pier 3, Brooklyn Army Base, New York, at 11:40 A.M. All loading and unloading operations and the performance of all stevedoring functions on said vessel and at said pier were carried out by American Stevedores, Inc. (hereinafter referred to as American), the impleaded respondent, pursuant to a contract with the Transportation Corps of the United States Army.

2. At 1:00 P.M. that day a number of longshoremen employed by American first boarded the vessel to work hatches numbered 1, 3 and 4. They included three hatch bosses. Marine carpenters employed by American also boarded the vessel shortly thereafter. The libelant, John Orlando, was among the marine carpenters. American had the sole responsibility for supervising, directing and controlling the work of the longshoremen and the marine carpenters; and it was the decision of American to have them board the ship when they did.

3. The sole means of ingress to and egress from the vessel was by a platform type gangway approximately 40 feet long and 4 feet wide, running from the dock end to the ship's bulwark. From the bulwark a stepped ladder or brow ladder ran to the main deck level. The said gangway was raised, brought alongside

the hull of the vessel, and placed by a fork chain lift operated by an employee of American.

4. The said brow ladder was positioned between No. 4 and No. 5 hatches. The distance between No. 4 and No. 5 hatches was approximately 20 feet.

5. The gangway and the brow ladder were safe and secure. The brow ladder was not wobbly.

6. Prior to the arrival at the Port of New York, the vessel had loaded grain in No. 2 and No. 4 deep tanks and No. 5 hold at Norfolk, Virginia.

7. The libelant, John Orlando, boarded the ship at about 1:05 P.M. carrying a circular electric saw attached to a wire and was followed by a co-worker, Canzoneri, who was carrying the coiled wire attached to the saw and which left a slack of between 10 to 12 feet of said wire hanging down between himself and the libelant.

8. In order for the libelant and Canzoneri to proceed to a fuse box in the resistor house on the main deck, it was necessary for libelant to turn slightly to the left when reaching the deck level, whereas members of the longshore gangs who had just preceded libelant in boarding the vessel turned to the right upon leaving the brow ladder in order to go to the hatches to which they had been assigned.

9. The libelant, upon stepping on the part of the main deck not traversed by the longshoremen, slipped on grain and fell backwards on the flat of his back, striking his head and back forcibly against the deck surface.

10. When libelant fell to the deck he fell in the vicinity of No. 4 hatch. The proximate cause of the libelant's fall was the presence of grain on the deck which caused his foot to slip out from under him.

11. The presence of grain on the deck on the SS San Angelo Victory at the time of the libelant's fall constituted an unseaworthy condition.

12. The libelant was removed from the scene of the accident by ambulance and was hospitalized for a period of three days, from February 17, 1960 to February 19, 1960, when he was discharged from the hospital. Libelant was unable to work until April 28, 1960, a period of ten weeks.

13. The libelant suffered considerable pain at the time of the accident, during his hospitalization, and on intermittent occasions thereafter.

14. The libelant does not at this time have any permanent disability.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. The libelant was injured on the 17th day of February, 1960, as a result of an unseaworthy condition on the SS San Angelo Victory, a vessel owned, operated and controlled by the respondent, Prudential Steamship Corporation.

3. The libelant has sustained his burden of proving, by a fair preponderance of the credible evidence, that his injuries were the proximate result of respondent Prudential Steamship Corporation's breach of warranty of seaworthiness.

4. The libelant is entitled to a decree. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The decree shall include an award of damages in the total amount of $5,250.00, which is made up of the following items of damages and in the amounts indicated:

Lost wages for the ten week period of disability—$1,250.00
Intermittent lost wages—$1,000.00
Pain and suffering—$3,000.00

5. American Stevedores, Inc. did not breach its duty to perform in a workmanlike manner. Respondent Prudential Steamship Corporation is not entitled to a decree against American. Calderola v. Cunard Steamship Co., 279 F.2d 475 (2d Cir., 1960), cert. denied sub nom. Cunard Steamship Co. v. Clark, 364 U.S. 884, 81 S.Ct. 172, 5 L.Ed.2d 104.

Submit decree on notice.