**L. C. HAYNES, Libelant,**

v.

**REDERI A/S ALADDIN et al.,
Respondents.**

**Ad. No. 1629.**

United States District Court
S. D. Texas,
Houston Division.

Oct. 7, 1963.

On Motion to Retax Costs Jan. 14, 1965.

Mandell & Wright, Arthur J. Mandell, Houston, Tex., for libelant.

Eastham, Watson, Dale & Forney, Edward W. Watson, Houston, Tex., for respondents.

Royston, Rayzor & Cook, Mayo J. Thompson, Houston, Tex., for intervenor Texas Employers Ins. Assn.

HANNAY, District Judge.

Libelant on or about 4:30 p. m. on January 17, 1957, while working in the course of his employment as a gang foreman of longshoremen aboard the vessel SS ASKVIN, owned and operated by the respondents, slipped and fell. Seeking damages for his fall, libelant alleges that as a proximate result of the unseaworthiness of the vessel and negligence on the part of respondents, he sustained serious and permanent injuries.

Respondents reply and deny that they are liable either because of unseaworthiness or negligence and say that if libelant sustained any injuries at the time and place alleged, it was solely and proximately caused or contributed to by libelant's own acts of negligence, and particularly in failing to watch where he was stepping at the time of his fall. Respondents further plead unavoidable accident.

Thereafter, Texas Employers Insurance Association, the Longshoremen's and Harbor Workers' carrier, filed a Petition of Intervention praying that in the event libelant recovered any damages of and from the respondents, the inter-

venor would recover its damages, being the amount of compensation and medical expense it had paid in the total sum of $6,892.25 plus a reasonable proctor's fee.

The case was tried to the court without a jury. The court finds that immediately before the time of the mishap to libelant, libelant was signaling the winch man in the loading of sack cargo. Just before libelant's fall, someone from the dock to which the vessel was moored called libelant's nickname, Captain Mike. Libelant, without looking around, stepped backwards two or three steps, then his left heel slipped and he fell. Testimony was introduced to the effect that the winches had been oiled a short time before the mishap and that one witness testified that he saw a footprint in a small trickle of oil on the deck. Libelant testified as to oil being on one shoe and his trousers. He did not see oil on the deck.

## LIABILITY

A. *Unseaworthiness.* In Robillard v. A. L. Burbank & Co., Ltd., D.C., 186 F. Supp. 193, Circuit Judge Friendly (sitting by designation), in an opinion dated July 21, 1960, carefully reviewed and analyzed longshoremen's cases involving liability for falls aboard vessels. Under the subheading of "Unseaworthiness" he traced the history of this warranty for the preceding fifteen years beginning with Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, deciding that a longshoreman injured aboard a vessel can recover for unseaworthiness from a nonnegligent shipowner. In Alaska SS Co. v. Petterson, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, it was held that a shipowner was liable for unseaworthiness to an employee of a stevedoring company for injury caused by the breaking of a block assumed to have been brought on the vessel by the plaintiff's employer.

In the far reaching opinion of Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941, the Su-

preme Court ruled that liability for a temporary condition is the same as for a permanent condition. In fact, the Mitchell case, supra, extends the doctrine of unseaworthiness so far as to make a shipowner liable regardless of fault.

Then in 1963 in Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297, decided in May, made the shipowner an insurer for those performing any work on a ship subject to maritime jurisdiction. This is a far advancement from the original duty of the shipowner with respect to seaworthiness, to-wit, "to furnish a vessel that is reasonably fit for its intended use, one that is staunch and strong and that is fitted out with all proper equipment and in good order, and that carries a sufficient and competent crew and complement of officers." See Gilmore and Black, The Law of Admiralty, 158.

Then on June 10, 1963, in the case of Shenker v. Baltimore & Ohio R. Co., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709, in his dissenting opinion Mr. Justice Goldberg correctly interpreted the majority opinion in the following language, at page 14, 83 S.Ct. at page 1675:

"Under the rationale and result of this case, a railroad would be liable for a defect which first appeared immediately prior to the injury for which recovery is sought and which even the most scrupulous kind of inspection procedure could neither have avoided nor detected. What the Court appears to have done is to create not simply a duty of inspection, but an absolute duty of discovery of all defects; in short, it has made the B & O the insurer of the condition of all premises and equipment, whether its own or others, upon which its employees may work. * * "

Under the latest decisions of the Supreme Court, I find that at the time of libelant's fall respondents' ship was unseaworthy.

B. *Negligence.* Judge Learned Hand in a case that he wrote on in April 1960, Santomarco v. United States, 277 F.2d 255, substantially similar to the instant

case in that a longshoreman was injured on oil which leaked from a winch and ran across the deck, quoted with approval a definition of Mr. Justice Holmes as follows:

" 'Ordinary care, then * * * implies the exercise of reasonable diligence, and reasonable diligence implies, as between the employer and employe, such watchfulness, caution, and foresight as, under all the circumstances of the particular service, a corporation controlled by careful, prudent officers ought to exercise.' Wabash Railway Co. v. McDaniels, 107 U.S. 454, 460, 2 S.Ct. 932, 938, 27 L.Ed. 605; S. H. Kress & Co. v. Telford, 5 Cir., 240 F.2d 70, 73; The T. J. Hooper, 2 Cir., 60 F.2d 737, 740. It appears to us that, however likely it may be that the ordinary longshoreman would have taken the risk of walking on the oil spot, to do so involved an obvious hazard and was an impermissible imprudence."

However, in the case of Rogers v. Missouri Pacific R. Co., 352 U.S. 500, at page 506, 77 S.Ct. 443, at page 448, 1 L.Ed.2d 493 decided February 25, 1957, the Supreme Court in construing 35 Stat. 66, 45 U.S.C. § 53, observed:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence."

As late as August 1963 in Keel v. Greenville Mid-Stream Service, Inc., et al, 321 F.2d 903, the Fifth Circuit has held that the doctrine of comparative negligence is in full effect under both the Jones Act and general maritime law or admiralty, and, of course, as was said in Page v. St. Louis Southwestern R. R. Co., 5 Cir., 312 F.2d 84, 98 A.L.R.2d 639:

"The standard of liability under the Jones Act is governed by the substantive provisions of the Federal Employers' Liability Act. 46 U.S.C.A. § 688. See Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 523, 77 S.Ct. 459, 1 L.Ed.2d 515 (1957)."

The Page case further held:

"It is, of course, established under the Federal Employers' Liability Act that the burden of proving contributory negligence is on the defendant. That burden includes proof both of the contributory negligence act or omission and of the causal effect of that act or omission on the accident and injury, just as the plaintiff's burden includes the questions both of the carrier's negligence and of the causal effect of that negligence on the injury."

█ In line with the above, I find as a fact that respondents on the occasion in question were negligent and that that negligence directly and proximately resulted in injury to libelant.

I further find by a preponderance of the evidence that libelant's fall was in part caused by his own contributory negligence and that that contributory negligence proximately resulted in a portion of his injuries.

I further find that libelant's injuries were not the result of an unavoidable accident.

## DAMAGES

At the time of his injury libelant was 67 years of age. He incorrectly told several doctors who examined him after the mishap that his age on January 17, 1957, was 57 years. Making this same mistake several times was deliberate on his part. For two years before his mishap, libelant did comparatively little longshoreman's work. The reason he assigned was "he was needed at home." This was not a plausible reason. He appeared at the trial a stooped, infirm old man wearing glasses because of cataracts, his hearing

impaired, with palsied trembling hands, with a history of high blood pressure, and using a cane. None of the above ailments do I attribute to his fall or to trauma. The degenerative condition of his back I find was hastened and made worse to some extent by his fall; however, the proof on that point is inconclusive because of libelant's refusal to have a myelogram which is the most accurate means of ascertaining the condition of the spine. Immediately after his injury libelant's main complaint was to his left shoulder. He waited until a day or two of the time that limitation would have run in which to file this law suit.

There are cases that seem to indicate that a longshoreman after he reaches the age of 65 no longer has a work expectancy as a longshoreman. See Robillard case, supra, paragraph 7, and cases cited therein.

The power of a trier of facts with reference to the cause and extent of injuries is indeed broad.

 I find as a fact that because of his injuries on January 17, 1957, the libelant is entitled to recover from respondents subject to diminution because of his contributory negligence as hereinafter set out as follows:

A. For loss of wages from the date of injury to the date of trial— $7,500.00

B. For physical pain and suffering, past, present and future— 7,500.00

C. Intervenor has proved and is entitled to be reimbursed for the payments made as
(1) insurance carrier of the stevedoring company in the sum of $5,592.25, and 5,592.25
(2) for physicians' fees and medical expenses incurred, $1,-300.00 (which I hold to be reasonable, usual and necessary) 1,300.00

D. For loss of earning capacity from date of trial and in the future, present cash value— None

 Deducting 50 per cent or one-half from the above total of $16,300.00, leaves a balance of $8,150.00, less $6,892.25 awarded to intervenor, resulting in a net recovery to libelant of $1,257.75.

In summary I find by a preponderance of the evidence in favor of the libelant as against the respondents on the issue of unseaworthiness and on the issue of negligence, subject to diminution because of libelant's contributory negligence.

I find by a preponderance of the evidence that immediately before his fall libelant was guilty of contributory negligence and that it directly and proximately resulted in 50 per cent of his injury and damages.

I find in favor of the intervenor for the amounts paid libelant as longshoreman's and harbor workers' compensation plus physicians' fees and medical bills paid by intervenor.

I find that the amount awarded to libelant should be and hereby is reduced 50 per cent because of his contributory negligence in causing his fall. Libelant's negligence I find by a preponderance of the evidence was a proximate cause of the accident.

Interest at the rate of six per cent per annum is awarded respectively to the persons above awarded damages from the date of judgment until paid.

I find that this court has jurisdiction of the subject matter and parties to this suit.

I award all costs of court herein against the respondents.

This will constitute the findings of fact and conclusions of law herein.

On Motion to Retax Costs

Heretofore in a trial on the merits before the Court, judgment was rendered for Libellant in the total sum of $16,-300.00, less 50% which was deducted because of a finding of contributory negligence, leaving a balance of $8,150.00.

**190**

The sum of $6,892.25 was awarded to Intervenor, the compensation insurance carrier, resulting in a recovery to Libellant of $1,257.75 before payment of his attorney's fees.

Thereafter, Libellant's attorneys filed a motion to retax costs and to allow them attorney's fees to be deducted from carrier's portion in the sum of either $2,-200.00, or in the alternative, $2,700.00. Attorneys for the Intervenor also filed a claim for reasonable attorney's fees. A hearing was had as to this matter of attorney's fees and retaxing costs.

It is my finding and I hold, under the law and under the particular facts of this case, that attorneys for Libellant are only to recover as attorney's fees out of the recovery of Libellant, to-wit, the sum of $1,257.75.

I further find that the Intervenor, Texas Employers' Insurance Association, is both the compensation carrier and also the liability insurer of the stevedore company. The stevedore company is not a party to this suit. I therefore find that the Intervenor's attorneys are not entitled to attorney's fees herein and the same are denied.

I further find, however, that Libellant's attorneys are entitled to recover necessary and reasonable expenses incurred in the trial of the case on its merits in the following items only, to-wit:

Photostats of medical records
— $ 44.22
Paid to witnesses for loss of
4 days work — 150.00
Total $194.22

Said sum of $194.22 to be paid out of Intervenor's funds recovered herein.

All other relief prayed for by either Libellant or Intervenor is herewith denied.

Except as set out in this memorandum, the original findings of fact and conclusions of law herein filed are unchanged.