332 F.2d 651
 Guiseppe NICROLI, Plaintiff-Appellee-Appellant,
v.
DEN NORSKE AFRIKA-OG AUSTRALIELINIE WILHELMSENS DAMPSKIBS-AKTIESELSKAB et al., Defendants and Third-Party Plaintiffs-Appellees,
v.
INTERNATIONAL TERMINAL OPERATING CO., Inc., Third-Party Defendant-Appellant.
 United States Court of Appeals Second Circuit.
 Submitted April 6, 1964.
 Decided June 1, 1964.
 
 Di Costanzo, Klonsky & Sergi, and Robert Klonsky, Brooklyn, N. Y., for plaintiff-appellee-appellant.
 Haight, Gardner, Poor & Havens, New York City (J. Ward O'Neill and Thomas F. Molanphy, New York City, of counsel), for defendants and third-party plaintiffs-appellees.
 Alexander, Ash & Schwartz, New York City (Sidney A. Schwartz and Joseph Arthur Cohen, New York City, of counsel), for third-party defendant-appellant.
 Before LUMBARD, Chief Judge, and MOORE and SMITH, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge.
 
 
 1
 This case presents the familiar tangled triangle of the longshoreman, shipowner, and stevedore, each of whom appeal from a judgment, entered in the United States District Court for the Southern District of New York by Judge John F. X. McGohey sitting without a jury, granting recovery to the longshoreman from the shipowner and awarding indemnity to the shipowner from the stevedore. We find no error, and affirm the judgment.
 
 
 2
 The plaintiff Nicroli, a longshoreman, injured his elbow when he slipped and fell on a deck coated with a fine residue of wet sugar. Nicroli was a cooper, whose task was to salvage as much as possible of the spillage which normally occurs during the unloading of a cargo of bagged sugar. This function was performed by sweeping together and rebagging sugar that had spilled on the deck, and by sewing ripped bags. However, the coopers were not able to remove all the spilled sugar from the deck with their shovels and brooms, and a thin residue of sugar granules, requiring hosing down the deck to remove, normally remained.
 
 
 3
 On the afternoon of August 13, 1956, the plaintiff swept up spilled sugar from the area of Hatch #1. Just prior to leaving work at 5:00 p. m., the plaintiff stored two brooms and six shovels at the forward side of the skid near Hatch #1. Rain fell the afternoon and evening of August 13, turning the sugar residue, which had been permitted to remain on the deck overnight, to the consistency of molasses. There were longshoremen aboard the ship as late as 9:00 p. m. the evening of August 13, but only the ship's employees remained aboard from 9:00 p. m. until 7:00 a. m. the morning of August 14, when the first gang of longshoremen arrived to straighten the skids and hatches. By the time the plaintiff came on board at 8:00 a. m., neither the skids nor the deck had been hosed down by the ship's crew or by the longshoremen; nor had any other steps, such as throwing sawdust on the deck, been taken to correct an obviously slippery condition. Plaintiff's gang was assigned to the #3 Hold, and he went to the #1 Hatch by the offshore passageway to collect the shovels and brooms which he had stored in that vicinity the day before. The offshore area of the deck was free from the melted sugar, but the plaintiff did not choose to return by that route. Instead, with six shovels and two brooms on his shoulder, Nicroli took the inshore route, a route which required him to step down from the two-foot high skid to the slippery deck. As he stepped from the skid, his foot slipped on the melted sugar, and he fell to the deck, striking his elbow on the after edge of the skid.
 
 
 4
 The plaintiff went ashore and bathed his elbow in hot water. He then returned to the ship and worked the remainder of the day. He did not work again until April of 1957 because the trauma to his elbow had so aggravated a pre-existing arthritic condition that the movement of his right arm became permanently restricted about 25-40%. Plaintiff continued to work as a cooper through the end of 1957. In January of 1958, having reached the age of 65, the plaintiff retired. His lost earnings due to the accident amounted to $4,468.64, while his medical expenses came to $368.15.
 
 
 5
 The trial court found that the wet and melted sugar had made the deck so slippery that the ship was unseaworthy and the shipowner negligent. The court also found that the plaintiff was contributorily negligent for failing to look where he was going, and for taking, with six shovels and two brooms on his shoulder, a route which required stepping from a two-foot high skid to a slippery deck when he knew that a safe alternate route was available. The court awarded the plaintiff $6500 for pain and suffering plus his lost earnings and medical expenses, making a total award of $11,336.79; this figure was then reduced by 50% to $5,668.40 because of the plaintiff's contributory negligence. Lastly, the court found that the stevedore had breached its warranty of workmanlike service by failing to correct the dangerously slippery deck or by holding up work until the ship's employees corrected the dangerous condition. The shipowner was allowed indemnity from the stevedore for the amount of the plaintiff's judgment plus counsel fees and costs incurred in defending the suit.
 
 I. THE PLAINTIFF'S APPEAL
 
 6
 We shall deal first with the plaintiff's claims that his award should be increased. The plaintiff contends that the award of $6500 for his pain and suffering was clearly inadequate. There is no merit to this claim. Plaintiff was 63 years old at the time of the accident and had a pre-existing arthritic condition in his right elbow. After soaking the elbow in water, he was able to work the remainder of the day on which the injury occurred. While there is a permanent disability impairing the functioning of his right arm, some of that impairment is attributable to the pre-existing arthritis. Under the circumstances, this court would be hard pressed to upset even a lesser amount as clearly erroneous. Compare Santomarco v. United States, 277 F.2d 255, 257 (2 Cir. 1960), where an award of $1000 for pain and suffering from head, back and hip injuries resulting from a fall on an oil slick deck was upheld.
 
 
 7
 The plaintiff also argues that the trial court's finding that the plaintiff was 50% contributorily negligent is clearly erroneous. There is no substance to this argument either. The plaintiff knew or should have known that the route he took would be slippery, and he knew that a safe route was available. Moreover, had he watched where he was going, he would have seen the dark, molasses-like sugar. In Santomarco v. United States, supra, plaintiff's damages were reduced by 50% for his contributory negligence in taking an unsafe route through an accumulation of oil on the deck. See also Ktistakis v. United Cross Navigation Corp., 324 F.2d 728 (2 Cir. 1963); Shenker v. United States, 322 F.2d 622 (2 Cir. 1963), cert. denied American Stevedores, Inc. v. Shenker, 376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606. The District Court's finding of 50% contributory negligence is amply supported by the record and must be sustained.
 
 II. THE STEVEDORE'S APPEAL
 
 8
 We turn next to the stevedore's challenges to its being forced to bear half the costs of the plaintiff's mishap. The stevedore's first contention is that the District Court's finding that the sugar-coated deck rendered the ship unseaworthy was erroneous as a matter of law. The argument runs, somewhat inconsistently with the repairman tack taken below, that a thin layer of sugar normally accumulates on the deck whenever a cargo of sugar is unloaded and is simply one of the risks that seamen and longshoremen must anticipate. However, the plaintiff did not fall on the sugar which was in the same condition as it spilled from the ripped bags. The record reveals that the long rain had turned it into a treacherous molasses-like substance that made the deck unreasonably slippery. It is well settled that such a dangerous condition will make a ship not reasonably fit for its intended purpose and hence unseaworthy. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Ktistakis v. United Cross Navigation Corp., supra. See also Note 76 Harv.L.Rev. 819 (1963).
 
 
 9
 The stevedore resourcefully attempts to shoehorn the plaintiff within the line of cases which hold that a seaman injured by a defective condition which was his task to remedy may not recover on the ground of unseaworthiness. E. g., Walker v. Lykes Bros. S. S. Co., 193 F.2d 772 (2 Cir. 1952); Bruszewski v. Isthmian S. S. Co., 163 F.2d 720 (3 Cir. 1947). Assuming that the doctrine of these cases is still good law,[1] the plaintiff does not fit the shoe. Though his job was to salvage as much sugar as possible by sweeping up the spillage, the uncontradicted testimony makes it clear that it was impossible to remove all the sugar with a broom and shovel. A fine residue of sugar necessarily remains unless removed by hosing down the deck. There is no evidence that the plaintiff was charged with the task of hosing down the deck, a job customarily performed by the ship's crew.
 
 
 10
 The stevedore also attacks the District Court's finding that the shipowner was negligent in failing to exercise reasonable care to provide the plaintiff with a safe place to work. It is argued that there is no evidence to show that any of the ship's crew knew of the dangerous condition between 5:00 p. m. August 13 and 8:00 a. m. August 14, and that two federal statutes made it impossible for the ship to hose down the deck lawfully while the ship was in the New York harbor. Both prongs of this contention are without merit, though the latter is rather ingenious. The overnight presence of the wet and melted sugar was clearly a long enough period to charge the shipowner with constructive knowledge of the dangerous condition. 33 U.S.C. § 407,[2] which generally prohibits the deposit of refuse in navigable waters, and 33 U.S.C. § 441,[3] which prohibits the deposit of refuse or "any other matter of any kind, other than that flowing from streets, [or] sewers * * * in a liquid state" in the New York harbor cannot be construed to prevent the hosing of sugar from a ship's deck. Though the statutory language is broad, the purpose of these statutes is to prevent the discharge of matter which will clog or obstruct the harbor or other navigable waters. See Warner-Quinlan Co. v. United States, 273 F. 503 (3 Cir. 1921). It is highly unlikely that sugared water would obstruct the New York harbor. In any case, if the ship's crew were disturbed at the prospect of polluting the harbor with watered-down sugar, they could have used sawdust to make the deck less slippery.
 
 
 11
 Thirdly, the stevedore contends that the finding that it breached its warranty of workmanlike service must be set aside as clearly erroneous. The District Court found that the stevedore breached its duty to perform in a workmanlike manner "by its failure, before commencing work on the morning of the 14th, to itself correct the dangerous condition or to call on the ship's personnel to do so; and to hold up the work of unloading until correction was effected." Relying on Orlando v. Prudential Steamship Corp., 313 F.2d 822 (2 Cir. 1963), the stevedore contends that it had no duty to inspect the ship before commencing work and that it had no notice of the dangerous condition in the vicinity of Hatch #1, which was not scheduled to be unloaded until 11:30 a. m. that morning. We think this argument wide of the mark. "Whether a hazard is created by the negligence of the shipowner or otherwise, the stevedoring firm is liable for indemnity if a workmanlike performance would have eliminated the risk of injury." DeGioia v. United States Lines Co., 304 F.2d 421, 424 (2 Cir. 1962). The stevedore is chargeable with constructive notice of a dangerous condition through the knowledge of its employees including the plaintiff. Orlando v. Prudential Steamship Corp., supra. This is not a case like Orlando, where longshoremen were boarding the ship for the first time. The longshoremen were aboard the ship until 9:00 p. m. the evening of August 13, and the rain had started by 4:30 p. m. on August 13. Longshoremen were also aboard by 7:00 a. m. on August 14 to straighten out the skids and hatches, all of which were worked on that day. The longshoremen must have been aware of the wet deck and the melted sugar, and reasonable care would require that they take steps to correct the dangerous condition, such as scattering sawdust, or hold up work until the ship's crew hosed down the ship or scattered sawdust. See Misurella v. Isthmian Lines, Inc., 328 F.2d 40 (2 Cir. 1964). Moreover, the plaintiff's own negligence in failing to watch where he was going and in taking an unsafe route when he knew that a safe route was available would be sufficient to charge the stevedore with breach of its warranty of workmanlike service. Damanti v. A/S Inger, 314 F.2d 395, 399 (2 Cir. 1963).
 
 
 12
 Finally, the stevedore urges that the District Court erred in dismissing its counterclaim for indemnity from the plaintiff. Evidently inspired by Judge Friendly's hyperbolic footnote in Shenker v. United States, supra, 322 F.2d at 630 — that perhaps the circle will be completed by allowing the stevedore to recover from the plaintiff employee for breach of his undertaking to keep his eyes open — the stevedore seriously argues that it should be permitted to pass the burden of the loss back to the plaintiff. But permitting it to be passed all the way back to the plaintiff would replace the risks of this hazardous calling on the longshoreman solely to promote a theoretical notion of symmetry. Plaintiff's award has already been reduced because of his contributory negligence. To use his contributory negligence again to abrogate his recovery would undermine the salutary admiralty rule of comparative negligence. And in any event, the remedying of the dangerous condition was not the plaintiff's task.
 
 III. THE SHIPOWNER'S APPEAL
 
 13
 Finally, we turn to the shipowner's claim that it should be awarded indemnity from the stevedore for additional counsel fees incurred in defending this appeal. The stevedore is obligated to indemnify the shipowner for any loss incurred because of the stevedore's breach of its warranty of workmanlike service, and this obligation includes indemnity for the litigation expenses of defending suits brought against the shipowner. Paliaga v. Luckenbach Steamship Co., 301 F.2d 403 (2 Cir. 1962). Where the plaintiff did not press an appeal and the only actual contest on appeal was the recovery over against the stevedore, the shipowner's counsel fees on appeal have not been considered part of the damages to the ship from the stevedore's breach of warranty and have not been charged to the stevedore. Misurella v. Isthmian Lines, Inc., supra, 328 F.2d at 42; Calderone v. Naviera Vacuba S/A, 328 F.2d 578 (2 Cir. 1964). However, here a good portion of the shipowner's brief is devoted to resisting the plaintiff's efforts to increase his recovery, and the shipowner is to that extent entitled to reimbursement. Reasonable attorney's fees for that part of this appeal in the amount of $400 are taxed against the stevedore and are to be paid to counsel for the shipowner.
 
 
 14
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 See Dunbar v. Henry Du Bois' Sons Co., 275 F.2d 304, 306 (2d Cir. 1960), cert. denied 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed. 2d 46
 
 
 [2]
 "§ 407. Deposit of refuse in navigable waters generally
 "It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed: Provided, That nothing herein contained shall extend to, apply to, or prohibit the operations in connection with the improvement of navigable waters or construction of public works, considered necessary and proper by the United States officers supervising such improvement or public work: And provided further, That the Secretary of the Army, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waters, within limits to be defined and under conditions to be prescribed by him, provided application is made to him prior to depositing such material; and whenever any permit is so granted the conditions thereof shall be strictly complied with, and any violation thereof shall be unlawful."
 
 
 [3]
 "§ 441. Deposit of refuse in New York Harbor and adjacent waters prohibited; penalty
 "The placing, discharging, or depositing, by any process or in any manner, of refuse, dirt, ashes, cinders, mud, sand, dredgings, sludge, acid, or any other matter of any kind, other than that flowing from streets, sewers, and passing therefrom in a liquid state, in the tidal waters of the harbor of New York, or its adjacent or tributary waters, or in those of Long Island Sound, within the limits which shall be prescribed by the supervisor of the harbor, is strictly forbidden, and every such act is made a misdemeanor, and every person engaged in or who shall aid, abet, authorize, or instigate a violation of this section, shall, upon conviction, be punishable by fine or imprisonment, or both, such fine to be not less than $250 nor more than $2,500, and the imprisonment to be not less than thirty days nor more than one year, either or both united, as the judge before whom conviction is obtained shall decide, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction of this misdemeanor."