**Arthur JAMES, Plaintiff,**

v.

**SS JALADHAN, her engines, tackle, apparel and furniture, and Scindia Steam Navigation Co., Ltd., Defendants.**

**No. 8106.**

United States District Court
E. D. Louisiana,
New Orleans Division.

July 31, 1968.

A. D. Freeman, Jr., Morphy, Freeman & Batt, New Orleans, La., for plaintiff.

L. Howard McCurdy, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants.

CASSIBRY, District Judge.

Plaintiff Arthur James seeks to recover from the Scindia Steam Navigation Co., Ltd., owner of the SS Jaladhan, damages for personal injuries received on April 3, 1965 while employed by B. W. Farrell, Inc., to clean tanks in the hold of the ship. Plaintiff alleged unseaworthiness of the ship as the basis of his claim. The defendant denied the unseaworthiness and claimed that the injuries were caused by the plaintiff's own negligence or the negligence of his em-

ployer, B. W. Farrell, Inc., and impleaded B. W. Farrell, Inc. as a third-party defendant. The third-party demand was abandoned by the defendant on the day of trial.

The Jaladhan had carried a load of burlap bales as cargo in its tanks before docking at the Mandeville Street Wharf in New Orleans, and it was necessary that the tanks be cleaned in preparation for taking on oil at ports along the Mississippi River. Scindia's agent, Beal & Company, engaged B. W. Farrell, Inc., a professional ship's tank and hold cleaner, to clean the tanks. Farrell furnished all of the labor, supplies, pumps and gear necessary for the cleaning operation and supervised it. The ship personnel had nothing to do with the cleaning work other than to indicate to Farrell the location of the tanks to be cleaned.

The cleaning was done with a solution of cleaning chemical and water, which was mixed in a 600 gallon tank by an agitator system powered by a gas motor driven pump. This solution was pumped through hoses into the tanks in the hold for use by the workmen there and was recirculated to the tank by a "Red Devil" pump. Because the chemical solution can cause burns when it comes into contact with the skin, Farrell provided workmen with safety equipment consisting of a helmet and face mask, rainsuit, boots and gloves or vaseline for the hands.

When the plaintiff was hired on April 3 he was attending a welders' school and had previously been unemployed. This was the first time that he had done this kind of work. He was provided with the safety equipment and apparel when he reported for work at about 6:00 P.M., and was given a chipping hammer and a hose and was told to go down into the hold of the ship where water would be coming out of the hose to clean down the walls. He had cleaned one tank and was cleaning another at about 2:00 A.M. when he was told it was time to knock off. He went up on deck and, upon re-

moving his boots, discovered that the skin was peeling on his leg, and he showed Bartley W. Farrell, President of B. W. Farrell, Inc., this condition. Farrell told him to wash his legs off at a water hydrant, gave him some vaseline and told him to go to a doctor if it got worse.

The most serious dispute in this case is a factual one. The plaintiff contends that he received the chemical burns because the solution rose over the top of his boots and caused them to become filled with it. The defendant contends that the plaintiff improperly tucked the pants of his rainsuit inside the boots causing the solution to run off the suit and down into his boots.

■ I resolve the conflicting evidence against the plaintiff on this factual issue. He testified on direct examination that the water in the first tank which he cleaned was about halfway between his knee and his ankle, but that, after he went into the second tank, the water "stood in the hold" and rose over the top of his boots. On cross-examination he at first denied that his pants were tucked in his boots, but later admitted that they were. According to him he felt the water going into the boots, but it felt no different to other water and he did not complain until he took the boots off because he experienced no burning sensation. He had not been told that the solution was dangerous and he did not realize that it could be harmful.

Bartley W. Farrell testified that, after checking in the workmen, he stayed either on the wharf or in the tanks of the ship. He was unable to recall exactly how many times he was in the tanks and saw the men working, but the face mask and helmet each worker was wearing would have prevented any individual recognition. He did not see water standing in the tanks higher than boot height, and there was no complaint that the pump which recirculated the water had quit working that night. When

James came up out of the tank he saw that James' rainsuit pants were tucked into the boots.

Arthur John Thomas, Farrell's air compressor maintenance man at the time, operated the pump and he could recall no malfunction of the pump while James was working.

The plaintiff also testified that there was a hole in one of the boots, but he was burned on both legs so that this testimony cannot be given any weight as to the issue of causation of the injuries. After careful evaluation of the evidence the Court is convinced that James was mistaken in his belief that the water came over the top of his boots. He was working in water that came well up on his boots and, when he realized that they were filling with water, he naturally attributed it to the water he was standing in because he obviously was oblivious of the fact that having his pants tucked into his boots would affect the protection afforded by the rainsuit. The preponderance of the evidence therefore shows that the solution filled James' boots so as to cause the burns on James' legs because he had his pants tucked into his boots and not because the solution rose over the top of his boots.

■ Since the case was tried, the plaintiff has urged in supplemental brief that the defendant's failure to produce A. J. Perez, who was identified in the testimony as Farrell's foreman, raises a presumption against the defendant on the issue of whether or not the water rose over James' boot tops. Perez was listed by the defendant in the pre-trial order as a witness it would call, and he was also listed by the plaintiff as a witness he might call on cross-examination.

Since Mr. Perez was available to both parties, and neither called him, no presumption would arise under these circumstances by the failure to have him testify on the trial of the case. The case relied on by plaintiff, Aquillard v. Home Insurance Company, 203 So.2d 746 (La.App.1968), is not pertinent to the issue here.

The plaintiff, urging that he sustained the burden of proving that the solution did rise above his boot tops, argued that this case should be decided by the Court on the basis of the jurisprudence which has held vessels to be unseaworthy when a slippery substance or debris in the working area caused the decks to be unsafe and resulted in injuries to employees of independent contractors.[1] Having failed to prove the fact contended for, however, the plaintiff cannot sustain his charge of unseaworthiness against the Jaladhan.

■ A ship is unseaworthy if it, including its appliances and equipment, is not reasonably fit for its intended use.[2] The cleaning of the tanks is a necessary and normal task required for the function of this ship. Because a chemical is used which may cause burning on contact with the skin, protective gear and apparel is required for the workmen. The cleaning operation itself, however, cannot be regarded as creating unseaworthiness even though the solution necessarily runs and sloshes from the bulkheads and accumulates several inches in the hold.[3]

Plaintiff's injuries were caused by his improper use of safety equipment and/or inadequate supervision or attention of his employer as to his manner of use of the gear provided. None of these causes

1. He cites Haynes v. Rederi A/S Aladdin, 254 F.Supp. 185 (S.D.Tex.1963), aff'd 362 F.2d 345 (5th Cir. 1966); Mortensen v. A/S Glittre v. Federal Paint Company, 348 F.2d 383 (2nd Cir. 1965); De-Gioia v. United States Lines Company v. American Stevedores, Inc., 304 F.2d 421 (2nd Cir. 1962); Nicroli v. Den Norske, etc. v. International Terminal Operating Company, 332 F.2d 651 (2nd Cir. 1964).

2. Mitchell v. Trawler Racer, Inc., 362 U. S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

3. See Lind v. American Trading & Production Corporation, 294 F.2d 342 (9th Cir. 1961).

can be attributed to unseaworthiness of the ship, its equipment or appliances.[4]

For these reasons plaintiff's claim will be denied and his suit dismissed. Judgment will be rendered accordingly.

---

4. McQuiston v. Freighters and Tankers Steamship Co., 217 F.Supp. 701 (E.D.La. 1963); see Imperial Oil, Ltd. v. Drlik, 234 F.2d 4 (6th Cir. 1956), cert. den. 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 236; Taylor v. SS Helen Lykes, 268 F.Supp. 932 (E.D.La.1967) app. pend'g.